## 66259. GENERAL MOTORS ACCEPTANCE CORPORATION v. BOWEN MOTORS, INC. et al.

QUILLIAN, Presiding Judge.

This is an appeal from a verdict and judgment for defendants in an action to recover on a promissory note.

Defendant-appellees K. F. and Maxine Bowen are husband and wife. K. F. Bowen spent about 25 years employed in the retail sales of automobiles, the last five years of which as president and 20 percent owner of a large automobile dealership in Puerto Rico. In 1972, because of poor health, he retired and he and his wife came to Atlanta to live. Their son, defendant Richard Bowen, who was also employed by the same automobile dealership in Puerto Rico, remained there until 1974 when he decided to move back to the United States. At that time K. F. Bowen and Richard Bowen bought an incorporated General Motors automobile dealership in Fitzgerald, Georgia for $350,000. K. F. put up $275,000 and Richard supplied $75,000 from the sale of his condominium in Puerto Rico which K. F. had purchased and provided to him. Richard was given 25 percent of the stock, which was the minimum amount to qualify as an owner-operator with General Motors, and was named director and president; K. F. held the remaining 75 percent of the stock and was the vice president and the other director. The dealership name was changed to Bowen Motors, Inc. Richard initially resided in Fitzgerald and operated the dealership. K. F. and his wife continued to reside in Atlanta and K. F. relying on Richard to run the dealership, visited the dealership twice a year. To finance the wholesale purchase of automobiles, Bowen Motors entered into a floorplan financing agreement with plaintiff-appellant General Motors Acceptance Corporation (GMAC), and both K. F. and Richard Bowen individually executed an unconditional guaranty of any debts owed to GMAC by Bowen Motors. In 1976, at Richard's request, K. F. supplied $55,000 to cover Bowen Motors' bank overdrafts, some to GMAC. In 1977, contacted by GMAC as well as Richard, K. F. put approximately $50,000 more into Bowen Motors to prevent checks to GMAC from being dishonored. In 1978, K. F. gave $140,000 more, again to cover checks to GMAC. K. F. admitted these matters were of great concern to him, but he did nothing to alleviate the dealership's financial problems.

In May 1979 GMAC discovered that Bowen Motors was falsifying floorplan reports, as well as selling floorplanned cars out of trust, i.e., without paying GMAC for cars sold as required by the floorplan agreement, and informed K. F. Bowen that the amount owed was about $150,000. K. F. went to Fitzgerald in early June 1979 while GMAC was conducting an inventory and audit of Bowen

Motors floorplanned vehicles. GMAC discovered that they had not been paid for many of the cars they were financing under the floorplan agreement. On June 11, employees of the dealership produced records which they had theretofore concealed showing more cars sold out of trust and that GMAC was owed over $476,000. Under the floorplan agreement, GMAC had the right at that time to terminate the agreement and take possession of all the floorplanned vehicles held by the dealership and call upon K. F. Bowen's guaranty to recover the amount due. However, GMAC agreed to continue the floorplan agreement for 90 days if K. F. personally, instead of Richard, conducted the dealership until it could be sold, and K. F. agreed that he and his wife would indorse a Bowen Motors' demand promissory note to GMAC for $476,040 and as security therefor execute a deed to secure debt to GMAC for that amount on their real property in Atlanta. On June 12, K. F. had his wife come to Fitzgerald. K. F. signed the Bowen Motors' note as vice president, which he and his wife then both signed as indorsers, and executed the security deed on their property in Atlanta. Mrs. Bowen had no interest in Bowen Motors and apparently signed at the behest of her husband as she was the co-owner of the Atlanta property. Richard indorsed the note on the following day and supplied $35,000 on the amount owed raised from his home in the Atlanta area. A bill of sale to secure debt on the assets of Bowen Motors also secured the debt. The dealership continued thereafter with K. F. in charge for more than 90 days. GMAC kept a representative at the dealership to insure compliance with the floorplan agreement. In December 1979, K. F. sold the dealership and the net proceeds of $104,000 were applied to the debt owed to GMAC. A few months later, GMAC commenced this action to collect on the demand note against Bowen Motors, and K. F., Maxine and Richard Bowen. Bowen Motors and Richard did not answer. K. F. and his wife answered raising the defenses of failure of consideration, fraud and duress, and counterclaimed for negligence by GMAC and cancellation of the note and the deed to secure debt on their Atlanta property. During the course of the trial Maxine Bowen was dismissed as a counterclaimant. The amount owing on the note at time of trial exceeded $300,000. The jury found against GMAC on the note, in favor of K. F. Bowen on his counterclaim in the amount of $200,000, and cancelled the security deed to GMAC. GMAC's motion for judgment notwithstanding the verdict was denied. Its motion for a new trial was granted as to the counterclaim only. The trial court entered a final and appealable order under the provisions of OCGA § 9-11-54 (b) (Code Ann. § 81A-154). *Held:*

1. GMAC contends that the trial court erred in refusing to direct a verdict in its favor on the note. The evidence showed that

GMAC had a prima facie case for judgment on the note. Whether the trial court was correct in refusing to direct a verdict depends on whether any of the Bowens' defenses to the note were viable.

A. Was the defense of failure of consideration valid?

From the evidence, it is clear that the consideration running to Bowen Motors, the principal liable on the note, and to K. F. Bowen as guarantor, was GMAC's forbearance in not terminating its floorplan agreement, commencing action to take possession of all of Bowen Motors floorplanned vehicles, and proceeding against the guarantors of Bowen Motors, which it had the right to do under the floorplan and guaranty agreements. "Forbearance to sue on an obligation that is due is a valid consideration sufficient to support a contract. [Cit.]" *Long v. Royster Co.,* 156 Ga. App. 152, 153 (274 SE2d 134).

As the Bowens signed the note as indorsers, they are entitled to no independent consideration. "A person who lends his name to another party to a negotiable instrument in any capacity is an 'accommodation party.' [Cit.] He is an accommodation party regardless of whether he received any compensation for so acting or did so gratuitously, and he cannot legally assert lack of consideration for his accommodation since the value received by the principal debtor is the consideration for which the accommodation party bargained. [Cits.]" *Motz v. Landmark First Nat. Bank,* 154 Ga. App. 858 (1), 859 (270 SE2d 81).

Therefore, there is no evidence to support the defense of failure of consideration.

B. Is there evidence to support the defense of fraud?

Appellees claimed that GMAC defrauded them because GMAC misrepresented to K. F. that he was liable on his guaranty when he had been released from the guaranty by GMAC's increasing his liability without informing him; and because GMAC, on whom he relied, failed to inform him that GMAC knew that the Bowen Motors was in trouble or that GMAC's own auditors had not followed proper procedures.

The evidence shows that K. F. Bowen waived any release from his guaranty arising from an increase in liability. The guaranty stated: "Any liability of the undersigned hereunder shall not be affected by, nor shall it be necessary to procure the consent of the undersigned or give any notice in reference to any indulgence, compromise, settlement, extension or variation of terms of any obligation affected with . . . the Dealer or any other person interested . . . The undersigned does hereby expressly waive and dispense with . . . notices of non-payment or non-performance, notices of amount of indebtedness outstanding at any time . . . ." Compare, *Thurmond v.*

*Ga. R. Bank &c. Co.,* 162 Ga. App. 245 (1) (290 SE2d 126).

Moreover, "[a] misrepresentation as to the status of the law, or as to a matter of law, or as to its effect upon the subject matter of a contract is a statement of opinion only and can not afford a basis for a charge of fraud or deceit in the making of the contract." *Gignilliat v. Borg,* 131 Ga. App. 182, 183 (205 SE2d 479).

Despite evidence that GMAC knew that the dealership was in trouble and that some GMAC auditors were negligent in the performance of their audits of Bowen Motors, and that it was a custom of the trade for a floorplan creditor to inform a guarantor when the principal was having difficulty, any defense claiming fraud for failure to inform K. F. of such matters fails in the face of the language of K. F. Bowen's unconditional guaranty quoted above, as he specifically waived any such notifications.

There was also no confidential relationship requiring communication of GMAC's knowledge of Bowen Motors' condition to K. F. Bowen. They were related to each other by written contractual means only, containing no such express or implied relationships. Compare, *Charter Medical &c. Co. v. Ware Manor,* 159 Ga. App. 378 (5), 384 (283 SE2d 330). Mere assertions of reliance on the part of K. F. Bowen did not create a confidential relationship requiring any such disclosure. He had an equal, if not greater opportunity to discover the mismanagement of Bowen Motors, had he desired to.

Moreover, even if fraud could be found in the conduct of GMAC toward K. F. Bowen, he failed to exercise any diligence to discover any alleged fraud. "In order to show fraud and misrepresentation in the procurement of the contract as a defense to an action on the contract, it is not sufficient to show that false representations were made . . . It also must be shown that the defendant exercised due care to discover the fraud . . . [Cits.]" *Dr. Pepper Finance Corp. v. Cooper,* 215 Ga. 598, 601 (112 SE2d 585). " 'Misrepresentations are not actionable unless the hearer was justified in relying on them in the exercise of common prudence and diligence.' [Cits.]" *Daugert v. Holland Furnace Co.,* 107 Ga. App. 566, 569 (130 SE2d 763).

K. F. Bowen was 75 percent owner of Bowen Motors and an officer and director thereof. He visited the dealership but twice a year and testified he looked at the books. However, he did not routinely receive periodic statements of the condition of the business nor did he require them to be sent. He had the full authority to completely control the conduct of the dealership by virtue of his majority ownership. Yet he did nothing except infuse, apparently without question, nearly a quarter of a million additional dollars into the dealership over a two or three year period knowing full well the reason

the money was needed. He not only had the legal authority to control the operations of the dealership but also the experience and opportunity to do so. But he did nothing and claimed that he did not know anything because GMAC did not tell him.

Mrs. Bowen had no financial interest in Bowen Motors and no contact with GMAC. She knew nothing except what she had learned from her husband when he told her to come to Fitzgerald. She knew she was giving a lien on their Atlanta property to keep the business running. The only reasonable inference is that she signed the note and security deed because her husband asked her to. Despite her assertions to the contrary, there was no other rational reason for her to do so.

Accordingly, we find no evidence to support the defense of fraud.

C. Is the defense of duress supported by evidence?

The only duress or threat inferable from the evidence is that GMAC would terminate its floorplan agreement with Bowen Motors, take possession of the remaining floorplanned vehicles, and take action against K. F. Bowen on his guaranty.

"[I]t is not duress to threaten to do what one has a legal right to do. [Cits.] The threat to bring a civil proceeding against a person is not duress in a legal sense. [Cits.]" *Causey v. Matson,* 215 Ga. 306, 311 (110 SE2d 356).

" 'Business compulsion' or 'economic duress' involves the taking of undue or unjust advantage of a person's economic necessity or distress to coerce him into making a contract and is also recognized as a contractual defense. [Cits.] However, a duress claim of this nature must be based upon acts or conducts of the opposite party which are wrongful or unlawful. [Cits.]" *Charter Medical &c. Co. v. Ware Manor,* 159 Ga. App. 378, 381 (3), supra.

Contrary to appellees' assertion that duress existed because GMAC had precipitated their economic ruin, we find no evidence at the time of the execution of the note and security deed to support a defense of duress.

Moreover, as to both the fraud and duress defenses, when the dealership was sold by K. F. Bowen in December 1979, he, as an officer of Bowen Motors, signed an agreement entered into between Bowen Motors and GMAC releasing Bowen Motors' assets from the bill of sale to secure debt in return for paying the $104,000 net proceeds of the sale to GMAC. The agreement concluded by saying that it in no way affected the remaining indebtedness evidenced by the promissory note or released K. F. and Maxine Bowen from their personal indorsements of the note, nor from the deed to secure debt executed by them. This agreement clearly indicates K. F.'s

participation in the reduction of his and his wife's indebtedness to GMAC. If a party claiming fraud or duress in the creation of an obligation subsequently does an act inconsistent with the assertion of such defenses, he thereby ratifies his obligation and waives such defenses. *Brooks v. Hooks,* 221 Ga. 229 (1), 236 (144 SE2d 96); *Woods v. Wright,* 163 Ga. App. 124, 126 (292 SE2d 545).

We conclude, therefore, that the trial court erred in failing to direct a verdict for GMAC on the note. Compare, *Charter Medical &c. Co. v. Ware Manor,* 159 Ga. App. 378, supra.

2. GMAC asserts that it was also entitled to a directed verdict on K. F. Bowen's counterclaim for negligence, upon which the trial court granted a motion for new trial.

Contrary to appellees' argument, a denial of a judgment notwithstanding the verdict can be considered on appeal even though a motion for new trial has been granted, if the appeal is taken from a final judgment entered pursuant to OCGA § 9-11-54 (b) (Code Ann. § 81A-154). OCGA § 5-6-34 (c) (Code Ann. § 6-701); see *Executive Jet Sales v. Jet America,* 242 Ga. 307 (248 SE2d 676).

As we have shown in the foregoing division, GMAC owed no duty to K. F. Bowen upon which a claim of negligence can be sustained for failing to inform him of what it knew about the condition of Bowen Motors and GMAC's own internal problems. The evidence concerning customary practices in floorplan financing not involving GMAC is irrelevant when the terms of the guaranty he executed to GMAC specifically waived the right to any such information.

Moreover, a creditor has no duty to determine or to advise its debtor of the status of collateral involved. Compare, *C. & S. Nat. Bank v. Arnold,* 240 Ga. 200, 201 (240 SE2d 3); *Shaw v. Cook County Fed. &c. Assn.,* 139 Ga. App. 419, 420-21 (228 SE2d 326).

Accordingly, the trial court also erred in failing to direct a verdict for GMAC on K. F. Bowen's claim of negligence.

3. GMAC alleges it is also entitled to a new trial on the Bowens' liability on the deed to secure debt.

A. In rebuttal, GMAC called Roberts, who had been the accountant for Bowen Motors, and who would have testified as to certain telephone conversations he had with K. F. Bowen in 1978 and 1979 concerning Bowen Motors being out of trust on GMAC's floorplan agreement, which contradicted K. F. Bowen's testimony denying that he knew these things. The testimony was excluded on the basis of the accountant-client privilege of OCGA § 43-3-32 (Code Ann. § 84-220).

It is elemental that the predicate for the assertion of such a privilege is that an accountant-client relationship existed. There is no evidence in the record establishing that K. F. Bowen was a client of

Roberts at the time the conversations allegedly took place. Therefore the trial court was in error in excluding the testimony. Compare, *Allen v. State,* 51 Ga. App. 19, 23 (179 SE 555).

B. Because we determined in Division 1 that the trial court erred in failing to direct a verdict for GMAC on the note as there was no evidence to support the defenses of failure of consideration, fraud and duress to the note, it was also error for the trial court to charge the jury on these matters.

We do not know on what grounds the jury voided the Bowens' liability on the deed to secure debt. Since liability on the deed is closely tied to liability on the note, we cannot say as a matter of law that the improper exclusion of Robert's testimony and the erroneous charges on the defenses to the note did not influence the jury's verdict voiding the deed. Thus, the trial court's denial of GMAC's motion for a new trial on the Bowens' liability on the deed was error.

4. In view of the foregoing findings, the remaining allegations of error need not be addressed.

*Judgment reversed. Sognier and Pope, JJ., concur.*

DECIDED JUNE 20, 1983 —
REHEARING DENIED JULY 14, 1983 — 

*Nolan C. Leake, Byron Attridge, Ben B. Mills, Jr.,* for appellant.
*David R. Bundrick, Michael V. Elsberry, Robert E. Sherrell,* for appellees.