## 77283. SOUTHERN INTERMODAL LOGISTICS, INC. v. SMITH & KELLY COMPANY.
(379 SE2d 612)

SOGNIER, Judge.

Southern Intermodal Logistics, Inc., brought suit against Smith & Kelly Company alleging breach of contract and fraud arising out of a contract for hauling services. The trial court granted summary judgment to Smith & Kelly, and Southern Intermodal appeals.

The record reveals that appellant is engaged in the business of hauling containerized cargo from the ports of Savannah and Charleston to inland destinations. Appellee is an agent for shipping lines, and in that capacity its duties include procuring hauling services for its shipping line customers. William A. Thompson, Jr., appellant's regional sales manager, testified by deposition that he contacted Kathleen D'Amaral, equipment control manager for appellee, on April 1, 1986 regarding potential business, and they agreed appellant would provide hauling services for Prudential Lines, Inc., between Warner Robins and Charleston. There is no dispute that Prudential was experiencing financial difficulties at the time, that another hauling company, Controlled Distribution Services (CDS), had terminated its operations for Prudential because of nonpayment, and that appellant was aware that appellee was acting solely as an agent for Prudential. Thompson testified that in this initial conversation D'Amaral informed him only that Prudential, like most steamship lines, was slow to pay its bills, and that he would not have accepted the account if he had known that CDS had just cancelled its Prudential contract for nonpayment. D'Amaral, however, testified that she informed Thompson of CDS's action, and that Prudential's financial problems were "common knowledge" in the shipping industry.

The evidence further discloses that appellant quickly began having difficulty collecting payment from Prudential. Don R. McGlone, appellant's marketing director during Spring 1986, stated in his deposition that he met with James J. Flynn, appellee's equipment manager, to discuss the payment problem, and that although he could not recall specifically whether Flynn told him appellee would pay the account if Prudential failed to do so, he did recall leaving this meeting "feeling assured that [appellee] would pay us or else I think at that time we would have discontinued to handle [Prudential's] account." Flynn testified by deposition that he never told McGlone that appellee would satisfy the account if Prudential did not. Subsequently, appellee, on behalf of Prudential, terminated appellant's contract on May 3, 1986, allegedly for inadequate performance.

1. Appellant contends the trial court erred by granting summary judgment to appellee on the fraud claim, as material questions of fact remain regarding whether appellee wrongfully concealed information concerning Prudential's financial status from appellant or misled appellant to induce it to agree to haul for Prudential.

"Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." OCGA § 23-2-53. Appellant contends there is a jury question as to whether appellee's knowledge of Prudential's status or Thompson's inquiries of D'Amaral consti-

tuted "particular circumstances" giving rise to an obligation to disclose CDS's prior cancellation. We do not agree. While concealment of material facts may amount to fraud when the concealment is of intrinsic qualities the other party could not discover by the exercise of ordinary care, *Woodall v. Orkin Exterminating Co.*, 175 Ga. App. 83, 84 (332 SE2d 173) (1985), in an arms-length business or contractual relationship there is no obligation to disclose information which is equally available to both parties. *Miller v. Clabby*, 178 Ga. App. 821, 822-823 (344 SE2d 751) (1986); *General Motors &c. Corp. v. Bowen Motors*, 167 Ga. App. 463, 466-467 (1B) (306 SE2d 675) (1983). Under such circumstances, actionable fraud cannot be shown unless the plaintiff exercised due care to discover the fraud. *General Motors*, supra at 466.

In the instant case, appellee has presented evidence, undisputed by appellant, that Prudential's financial difficulties were well known in the shipping industry, and that numerous resources were available to provide information concerning the financial status of industry companies. There is also no dispute that appellant's officials made no inquiries concerning Prudential's financial status, reviewed no industry publications, and consulted no credit information services. Indeed, Thompson admitted that D'Amaral revealed to him that CDS previously had hauled for Prudential and also told him that Prudential was slow to pay its bills, but he did no further investigating. " '[T]here is no legal relief afforded when one "blindly relied on the representations of the [other party] as to matters of which he could have informed himself." ' [Cits.]" *Foremost Ins. Co. v. Southeast Recovery*, 175 Ga. App. 794, 796 (3) (334 SE2d 375) (1985). The entire record is devoid of the slightest evidence that appellant exercised any diligence or even ordinary care in ascertaining Prudential's true status before entering into the hauling agreement. See *Nicholson v. Harris*, 179 Ga. App. 35, 37 (3) (345 SE2d 63) (1986). Accordingly, we affirm the trial court's grant of summary judgment to appellee on the fraud claim. See generally *Casgar v. C & S Nat. Bank*, 188 Ga. App. 234, 235-236 (1) (372 SE2d 815) (1988).

2. Appellant also enumerates as error the trial court's grant of summary judgment to appellee on the contract claim, contending there is a jury question regarding whether appellee promised to pay Prudential's outstanding bills, thereby obligating appellee for the debts of its principal.

"[W]here an agent is duly constituted, and names his principal, and contracts in his name, the principal is responsible, and not the agent. [Cit.]" *Gibbs v. Car. Portland Cement Co.*, 50 Ga. App. 229, 230 (2d) (177 SE 760) (1934); see OCGA § 10-6-53. However, an agent, by expressly undertaking to do so, may become liable for the principal's obligation. OCGA § 10-6-85. Also, we note that oral

promises to answer for the debt of another generally are barred by the statute of frauds, see OCGA § 13-5-30 (2), but as appellee neither pleaded that affirmative defense nor offered any proof thereof, it has been waived. See *Piedmont Life Ins. Co. v. Bell*, 103 Ga. App. 225, 227-228 (1) (119 SE2d 63) (1961).

In the case at bar, there is no dispute that appellee disclosed the identity of its principal, and that appellant understood appellee was acting on behalf of its principal, who would be responsible for paying appellant for its services. Appellant, however, contends a factual question exists as to whether Flynn, in his meeting with McGlone, agreed that appellee would satisfy Prudential's obligations to appellant if Prudential defaulted. Appellee proffered Flynn's deposition testimony, in which he stated unequivocally that he never told Mc-Glone appellee would pay Prudential's debts owed to appellant. In rebuttal, appellant tendered only the deposition of McGlone, in which he "[could] not swear" that Flynn had said appellee would satisfy Prudential's obligations, could not recall whether Flynn stated appellee would pay Prudential's bills or merely agreed to ensure that Prudential paid them, and could remember only that he left the meeting "confident that we would receive monies."

"In passing upon a motion for summary judgment, a finding of fact which may be inferred . . . but is not demanded by circumstantial evidence, has no probative value against positive and unrebutted evidence that no such facts as sought to be inferred do exist. [Cit.]" *Kenny v. M & M Supermarket*, 183 Ga. App. 225, 226 (358 SE2d 641) (1987). Although all evidence adduced on a motion for summary judgment, including the testimony of the respondent, must be construed against the movant, the testimony of either party "is to be construed most strongly against him where it is self-contradictory, vague or equivocal. [Cit.]" *Thacker v. Matthews Tuxedo*, 183 Ga. App. 474, 475 (359 SE2d 231) (1987). Thus, appellant's theory, that because McGlone recalled being under the impression that appellant would be paid appellee must have agreed to do so, has no probative value against appellee's agent's unequivocal testimony that he never promised to satisfy Prudential's obligation to appellant. See *Kenny*, supra.

Appellant having introduced only vague and equivocal testimony, and having produced no evidence conflicting with the positive and direct testimony offered by appellee, we concur with the trial court's conclusion that no genuine issue of material fact remains as to the breach of contract claim, and accordingly appellee is entitled to judgment as a matter of law. See generally *Alghita v. Universal Investment &c. Co.*, 167 Ga. App. 562, 566-567 (307 SE2d 99) (1983).

*Judgment affirmed. Carley, C. J., and Deen, P. J., concur.*

DECIDED MARCH 3, 1989.

*Ronald C. Crawford*, for appellant.
*Bouhan, Williams & Levy, Roy E. Paul*, for appellee.