A93A0513. RUSSELL CORPORATION et al. v. BANCBOSTON FINANCIAL COMPANY.
(434 SE2d 716)

SMITH, Judge.

The Russell Corporation and Gulf South Petroleum, Inc., (the companies) engaged in the petroleum wholesale business. In 1985, BancBoston Financial Company (the bank) established a revolving line of credit in favor of the companies, secured in part by their inventory, accounts receivable, and certain real estate. The companies applied advances from this line of credit to pay their petroleum suppliers and also to purchase additional real estate.

In 1989, the companies were routinely issuing checks creating liabilities in excess of the amount available under the line of credit. In December 1989, the companies and the bank entered into an agreement (the letter agreement) providing, in part, for a modification of the line of credit in an amount contingent upon the outcome of a third-party appraisal of the real estate holdings offered as collateral. Based upon the appraisals, the bank determined that the companies had exceeded the maximum available credit by over $2,000,000 and demanded immediate payment in an amount sufficient to bring the companies within the allowable range of credit.

When the companies were unable to make this payment, the bank declared the entire outstanding balance thus far extended to be in default and initiated this action to foreclose upon the real property securing the loan. The companies answered and counterclaimed, alleging a variety of claims, including breach of contract, fraud, duress, tortious interference with business relations, breach of fiduciary duty,

RICO violations, and a claim for punitive damages and attorney fees. Following substantial discovery, the bank moved for summary judgment as to each counterclaim. After a hearing, this motion was granted in its entirety by the trial court, and the companies appeal.

Under the original agreement, all advances made against the line of credit were discretionary with the bank. The maximum principal amount was called the borrowing base, and was an amount which fluctuated daily. "Overadvances" were defined as "advances in excess of the borrowing base," and the decision whether to honor requests in excess of that borrowing based was solely the bank's. All overadvances were payable on demand. The companies expressly waived any notice requirements. Under the letter agreement, which modified and incorporated the original agreement, the parties agreed that the original loan was overadvanced and that although under the original agreement the bank was "not obligated to fund or carry overadvances," it now agreed to do so under the terms and conditions specified. The borrowing base was equal to the lesser of $18,500,000 or an amount determined by the sum of assigned values for inventory, accounts receivable, and specific parcels of real estate pledged as collateral.

According to the formula agreed upon by the parties, the real estate would be appraised as if announced for "90-day quicksale," defined as the amount which could be received in cash at the end of a 90-day marketing period. The letter agreement further provided that the bank would continue to fund overadvances until it had received the quicksale appraisals of the companies' realty. Upon receipt of the quicksale appraisals, the bank determined that these values, when incorporated into the borrowing base, would be insufficient to authorize the companies' demand for additional borrowing. The companies still had overadvances in an amount exceeding $2,000,000.

At that point, pursuant to the letter agreement, the companies were deemed to be on notice that no further overadvances would be honored by the bank and that all existing overadvances were subject to immediate demand for payment.

Before ceasing to honor additional demands for overadvances and before demanding immediate payment, the bank permitted the companies to examine the appraisals and to make comments and suggestions in an effort to convince the appraiser that higher values were authorized. The appraiser considered these criticisms and made certain adjustments to the values. Nevertheless, using these final appraisal figures, the bank deemed the companies to have substantial overadvances outstanding and demanded an immediate payment of nearly $2,700,000. It also refused to honor new demands for additional overadvances in the form of checks drawn by the companies against the line of credit.

1. "[A]t summary judgment, a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case. . . . [S]ummary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in [that] light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case." *Lau's Corp. v. Haskins,* 261 Ga. 491, 495 (4) (405 SE2d 474) (1991). In the absence of special circumstances, there is no fiduciary relationship between a bank and its borrowers. *Curtis v. First Nat. Bank of Commerce,* 158 Ga. App. 379, 380-381 (1) (280 SE2d 404) (1981). The trial court correctly determined that there was no evidence of special circumstances imposing upon the bank the duties of a fiduciary in favor of the companies under OCGA § 23-2-58. See *Cochran v. Murrah,* 235 Ga. 304, 306 (219 SE2d 421) (1975). Summary judgment as to any claim for breach of fiduciary duty was correct.

2. The trial court correctly determined that there is no genuine issue as to the companies' claims for fraud, duress, and coercion. The letter agreement is brief, and its terms are clear. These terms include an admission that the loan is overadvanced, an agreement that the bank had no obligation to honor new demands for overadvances upon receipt of the quicksale appraisals, the express exclusion from the borrowing base of certain properties the companies had wished to borrow against, and an express general release of the bank for any acts preceding the execution of the letter agreement.

The companies enjoyed the benefits of such continued overadvances as were allowed pursuant to the December 4, 1990 letter agreement, and have made no tender of those benefits. They have thus ratified the letter agreement, resulting in a waiver of any defense predicated upon fraud in the inducement, duress, or coercion, or fraud in the calculation of the overadvances. *General Motors &c. Corp. v. Bowen Motors,* 167 Ga. App. 463, 467-468 (1C) (306 SE2d 675) (1983); *Swint v. Adams,* 42 Ga. App. 705, 706 (157 SE 249) (1931). Any oral representations by a bank officer during negotiations were superseded by the subsequent writing and provide no basis for reasonable detrimental reliance on an understanding contrary to that writing. *First Nat. Bank &c. Co. in Macon v. Thompson,* 240 Ga. 494, 495 (241 SE2d 253) (1978).

3. As noted previously, all overadvances were payable upon demand. Since the companies admitted in the letter agreement the existence of overadvances, in an unspecified sum, the demand for payment of any and all overadvances was clearly not a breach of contract

by the bank. Likewise, the refusal to honor new demands for over-advances after the bank had received the quicksale appraisals was within the bank's rights under the letter agreement. Contrary to appellant's assertions, the bank did not have an unconditional obligation to fund overadvances up to $4,000,000, once it had received the appraisals. The original agreement provided that forbearance by the bank would not be a waiver, so no quasi new agreement was created when the bank accepted the companies' criticisms of the appraisals and incorporated them into the borrowing base before demanding payment for overadvances calculated at over $2,000,000. The trial court correctly determined that no question of fact existed as to whether the bank had breached its agreement with the companies by making its demand for payment of overadvances, and summary judgment as to that counterclaim was proper.

4. In order to state a claim under a theory of intentional interference with business relations, it is necessary to show, in part, that the alleged intermeddler acted improperly and without privilege. *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145, 146 (2) (430 SE2d 368) (1993). See also *Arford v. Blalock*, 199 Ga. App. 434, 440 (13) (405 SE2d 698) (1991). " 'The exercise of an absolute right or privilege is recognized as being closely akin to the question of justification, but it is inherently different therefrom in that such a right can be exercised without incurring liability regardless of the motive for so doing. It is generally held that no liability for procuring a breach of contract exists where the breach is caused by the exercise of an absolute right — that is, an act which a [person] has a definite legal right to do without any qualification.' [Cit.]" *Schaeffer v. King*, 223 Ga. 468, 470 (155 SE2d 815) (1967). Since the bank merely asserted its contractual rights in refusing to honor new demands for additional overadvances, one consequence of which was that appellants no longer were able to pay their suppliers, the trial court correctly granted summary judgment as to the counterclaim for tortious interference with business relations. See *A. L. Williams & Assoc. v. Faircloth*, 259 Ga. 767, 769 (2c) (386 SE2d 151) (1989).

5. There is no evidentiary basis for a civil violation of the Georgia RICO statute, OCGA § 16-4-1 et seq., and relief was appropriately denied as to this counterclaim. See OCGA § 16-14-5 (a).

6. Since no elements of damage alleged in appellants' counterclaims are recoverable, the trial court correctly granted summary judgment as to their claims for attorney fees and the expenses of litigation under OCGA § 13-6-11. *Bigelow-Sanford Carpet Co. v. Goodroe*, 98 Ga. App. 394, 401 (5, 6) (106 SE2d 45) (1958). The absence of any recovery of compensatory damages likewise precludes any award of punitive damages. *Viau v. Fred Dean, Inc.*, 203 Ga. App. 801, 804 (4) (418 SE2d 604) (1992).

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED JUNE 23, 1993 —
RECONSIDERATION DENIED JULY 26, 1993 —

*Decker & Hallman, F. Edwin Hallman, Jr., Steven M. Mills,* for appellants.

*Nelson, Mullins, Riley & Scarborough, Kenneth L. Millwood, Scott K. Tippett, B. Shane Clanton,* for appellee.