A95A1974. COULTAS v. DUNBAR et al.
(467 SE2d 373)

McMURRAY, Presiding Judge.

Plaintiff Michael A. Coultas brought this action against the individuals David H. Dunbar, Peggy Thomas, Mary Ann Alsobrook, who are employees of the Georgia Department of Human Resources, Office of Regulatory Services. Also named as defendants are Meadowbrook Management, Inc. ("Meadowbrook"), HCP III Hartwell, Inc., d/b/a Hart Care Center ("Hart Care"), and Angel Care of Cahokia, Inc., d/b/a Cahokia Health Care Center ("Cahokia Care"). According to the amended complaint, plaintiff, formerly "the Administrator of Defendant Meadowbrook's Hart Care Center . . . and/or the Administrator of Defendant Meadowbrook's Cahokia Health Care, [in] Cahokia, Illinois," was wrongfully discharged as a result of interference by the individual defendants with plaintiff's contractual rights and relations with defendant Meadowbrook. Specifically, defendants Dunbar and Thomas, in their official capacities with the Office of Regulatory Services, abused their authority when they allegedly "threatened to sanction the nursing facility [where plaintiff was administrator] because of Plaintiff's attempts to make the facility a no smoking facility." Further, "[a]ll . . . defendants [allegedly] agreed to work together to bring about the discharge of the Plaintiff from his employment with Defendant Meadowbrook, . . . [in a] conspiracy for the intentional interference with the contractual rights and relations between Defendant Meadowbrook and Plaintiff."

Defendants David H. Dunbar, Peggy Thomas, and Mary Ann Alsobrook jointly answered and denied the material allegations but admitted that "on November 26, 1991, the Georgia Department of Human Resources inspected the Hart Care Center and noted that the facility's no smoking policy violated state law and regulations." These defendants further averred that "Plaintiff and the facility submitted several plans of correction which did not correct the deficiency, but ultimately submitted a satisfactory plan of correction." In its answer,

defendant Meadowbrook denied that plaintiff was ever employed by Meadowbrook, contending instead that "Plaintiff was formerly employed as the Administrator of the Hart Care Center . . . and subsequently was the Administrator of Cahokia Care Center in Cahokia, Illinois." Hart Care admitted that "Plaintiff was its employee." Cahokia Care admitted that plaintiff "subsequently was employed by this Defendant as the Administrator of Cahokia Care Center in Cahokia, Illinois."

After a period of discovery, defendants David H. Dunbar, Peggy Thomas, and Mary Ann Alsobrook moved to dismiss the complaint, as against them, for plaintiff's "failure to follow the notice provisions of the Georgia Tort Claims Act[, OCGA § 50-21-26, and also because the] subject matter of the complaint falls within the exceptions to the Tort Claims Act[, under OCGA § 50-21-24 (7)]." By affidavit, David H. Dunbar, Peggy Thomas, and Mary Ann Alsobrook each deposed that he or she was acting "within the scope of . . . employment [. . . and] in good faith to enforce Georgia's Bill of Rights for Long[-]Term Care Residents." See OCGA § 31-8-100 et seq., the Bill of Rights for Residents of Long-term Care Facilities.

In response to this motion, plaintiff "admit[ted] that he has not complied with the notice requirements of the Georgia [Tort Claims] Act[, . . . and that] Plaintiff would be specifically prohibited from proceeding against either the [individual] Defendants or the [S]tate," for conduct undertaken in the course of their employment. Rather, plaintiff characterizes this action as one against the defendants " 'individually' " and outside the scope of official immunity, per OCGA § 50-21-25 (a). He submitted his affidavit, deposing that during October 1991, he instituted a no smoking policy at Hart Care; that, after being informed by the individual defendants that a no smoking policy was allegedly a violation of Georgia law, he revised the no smoking policy four times, but was nevertheless threatened by defendant Peggy Thomas with numerous inspections of all of Meadowbrook's 22 other nursing homes in Georgia; that a complaint survey or inspection was performed at Hart Care in March 1992, yielding many significant problems identified by surveyors even though there were no changes in the operation of the facility since the prior annual survey of September 1991; that one of the deficiencies would be resolved by changing the nursing facility administrator (namely, plaintiff), whereupon on March 30, 1991, plaintiff was discharged as the Hart Care administrator immediately after completion of the complaint survey and was rehired by Meadowbrook three days later and sent to Illinois; and that, after meeting with Georgia Department of Human Resources Commissioner James Ledbetter to explore the no smoking policy, plaintiff opted to submit his resignation from Cahokia Care in exchange for severance pay rather than be discharged.

In a separate motion, defendants Meadowbrook, Hart Care, and Cahokia Care jointly moved for summary judgment on the ground that plaintiff was an employee at will who could be terminated at any time. In response, plaintiff did "not contend that he was not an employee at will with no definite and certain contract of employment subject to discharge . . . at any time." Rather, plaintiff contended that "he would not have been discharged by these Defendants [Meadowbrook, Hart Care, and Cahokia Care] but for the wrongful and illegal interference . . ." of defendants with his contractual relations. In his deposition, plaintiff conceded that he had no "written contract . . ." with either Hart Care or Cahokia Care. He had "no specific term of . . . employment at the Hart Care facility[, . . . and no writing] promising [him] a certain length of time or period of employment [as administrator of Cahokia Care]." In support of his contention that the individual defendants abused their authority and conspired to bring about his wrongful termination, plaintiff testified that on Friday, February 7, 1992, his supervisor "Jewell Austin got in touch with me by telephone and she said, 'Peggy Thomas is livid.' She said, Peggy Thomas has threatened to fill [plaintiff's] facility with so many surveyors[, i.e., inspectors] that even if you do survive, there are 22 others [that Meadowbrook has] got to be concerned about." Because "Meadowbrook was having financial problems . . . they were having to work with the State Department of Human Resources[.]" Plaintiff also affirmed that Jewell Austin also told him "that she had been told by Peggy Thomas that [plaintiff's] latest [restricted smoking] plan was not sufficient[.]" Jewell Austin directed plaintiff to submit to the Department of Human Resources a smoking policy with which he did not personally agree, defendants' Exhibit 7, and which he believed was not required under state law. Plaintiff responded, " 'You sign it and I'll live with it.' " Jewell Austin replied, " 'You have to sign this, . . . we need an administrator to sign off on it.' " Plaintiff felt "my job was threatened, that if I did not sign that, . . . they were going to have to have someone sign that. My continued employment dealt with my signing off on this cover sheet [to the revised smoking policy]." Jewell Austin did not specifically say, " 'If you don't sign it, you're going to be fired[.]' " Rather, "she said, 'The administrator's going to sign this. You're going to sign it or you're not going to sign it.' What it boiled down to, my option, if I wanted to stay on board I . . . signed it. . . . Either I signed and kept the job or I didn't sign and I was fired." Plaintiff signed the cover sheet to the revised smoking policy, which was submitted to the Department of Human Resources by telefacsimile on February 10, 1992. Plaintiff affirmed that he received "notice from the State saying you[, i.e., Hart Care] have been certified, you have complied with the inspection[.]" Nevertheless, near the end of March 1992, "Jewell Austin terminated [plain-

tiff]." This was allegedly as a result of a "survey where the predetermined outcome was the removal of [plaintiff as] administrator of Hart Care Center." Jewell Austin told plaintiff "it's in the best interest of everyone because the State of Georgia is not going to allow this facility to be in compliance as long as [plaintiff is] the administrator and that [plaintiff] had to resign — no, she said [plaintiff] had to go . . . , not resign, [but] had to go." Plaintiff identified defendants' Exhibit 8 as the survey. There, deficiencies were noted under the operational goal that a facility "must be administered in a manner that enables it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychological well-being of each resident." In response, the provider's plan of correction informed the Department of Human Resources that a "change in administration was made effective 3/30/92." Plaintiff acknowledged there is nothing "anywhere in this document [where] it say[s] that the State was demanding, in order [for the Hart Care facility] to come into compliance, that [plaintiff] be terminated[.]" He testified, however, "[w]ith the attitude that the Department of Human Resources had, during the few days that I was fired [before accepting employment with Cahokia Care in Illinois,] through my networking I was able to establish that no nursing home corporation in the state of Georgia could hire me for fear of reprisal from the Department of Human Resources."

The trial court granted summary judgment to each defendant and this appeal followed. Plaintiff complains of that summary judgment only with respect to the individual defendants and does not appeal the grant of summary judgment as to Meadowbrook, Hart Care, and Cahokia Care. *Held*:

OCGA § 50-21-25 (a) provides in part that nothing in the Georgia Tort Claims Act "shall be construed to give a state officer or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties." Plaintiff's sole enumeration of error contends the trial court erred "in concluding that [the individual defendants] Dunbar, Thomas and Alsobrook were acting within the scope of their employment," with the Georgia Department of Human Resources. He argues in his brief that defendants "were acting outside their scope of employment when they took action against the [plaintiff] through his employer . . . to bring about his discharge from his lawful employment." In support of this argument, plaintiff relies on alleged threats communicated to Jewell Austin that government inspections would be made of all Meadowbrook's nursing home facilities in Georgia "if Meadowbrook did not promptly discharge [plaintiff]."

Plaintiff's affidavit evidence in support of his claim of threats amounting to intentional interference with his contractual relations is

hearsay. OCGA § 24-3-1 (a). Such evidence is inadmissible to prove that, when Jewell Austin related conversations to him, the threats plaintiff perceived had in fact been made by any of the defendants. See *Fuller v. Charter South*, 216 Ga. App. 211, 213 (2) (453 SE2d 754). Plaintiff conceded there is no documentary evidence that any Department of Human Resources' official made the government's certification of Hart Care contingent upon plaintiff's discharge. The direct evidence is that defendants acted at all times in their official capacities and in good faith to enforce OCGA § 31-8-112 (c), which provides: "Unless contradictory to written admission policies of which the resident . . . is informed prior to admission, each resident shall be permitted to use tobacco and to consume alcoholic beverages, subject to the facility's policies and safety rules and applicable state law, if the resident does not interfere with the rights of others." Whatever disagreements plaintiff and the defendants might have had over the interpretation and application of this particular Code section, the objective facts show that defendants acted only in pursuit of their official duties to apply and enforce the Georgia Bill of Rights for Residents of Long-term Care Facilities. There is a prima facie presumption in favor of the good faith of a public officer and that he has done his duty. *Scocca v. Wilt*, 243 Ga. 2, 3 (252 SE2d 401). " 'The record in the present case is utterly devoid of any conduct by ([defendants David H. Dunbar, Peggy Thomas, and Mary Ann Alsobrook]) which could remotely be construed as being sufficient to lift the shield that protects public officers acting colore officii.' *Partain v. Maddox*, 131 Ga. App. 778, 785 (206 SE2d 618) (1974). . . . Merely styling a suit against a public officer as one brought against him personally does not deprive him of any immunity to which he might otherwise be entitled for his official acts [under the Georgia Tort Claims Act]. *Hennessy v. Webb*, [245 Ga. 329, 331 (264 SE2d 878)]." *McDay v. City of Atlanta*, 204 Ga. App. 621 (1), 622 (420 SE2d 75). The allegations that the individual defendants conspired with those entities which had an absolute right under OCGA § 34-7-1 to terminate plaintiff's indefinite tenure as the administrator of Hart Care and Cahokia Care add nothing of substance. *Ga. Power Co. v. Busbin*, 242 Ga. 612, 614 (3) (250 SE2d 442). "In order to state a claim under a theory of intentional interference with business relations, it is necessary to show, in part, that the alleged intermeddler acted improperly and without privilege. *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145, 146 (2) (430 SE2d 368) (1993)." *Russell Corp. v. BancBoston Financial Co.*, 209 Ga. App. 660, 663 (4) (434 SE2d 716). OCGA § 50-21-25 (a) provides that the Georgia Tort Claims Act "constitutes the exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or

liability therefor." There is no competent evidence in the case sub judice that defendants David H. Dunbar, Peggy Thomas, and Mary Ann Alsobrook acted in any capacity *other than* their official capacity. The trial court correctly granted summary judgment to the individual defendant employees and officers of the Georgia Department of Human Resources.

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED FEBRUARY 1, 1996.

*William R. Sotter*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Mary F. Russell, Senior Assistant Attorneys General, Harman, Owen, Saunders & Sweeney, Perry A. Phillips*, for appellees.