NATIONAL FIRE INSURANCE COMPANY OF HARTFORD and Valley Forge Insurance Company, Plaintiffs,

v.

THRASHER CONTRACTING, LLC, and Michael Thrasher, Defendants.

Civil Action No. 1:14–CV–1997–AT.

United States District Court, N.D. Georgia, Atlanta Division.

Signed Aug. 31, 2015.

Lawrence Brannen Domenico, Deborah Shelles Cameron, Mozley, Finlayson & Loggins, LLP, Atlanta, GA, for Plaintiff.

### ORDER

AMY TOTENBERG, District Judge.

This matter is before the Court on Plaintiffs National Fire Insurance Company of Hartford and Valley Forge Insurance Company's Motions for Default Judgment as to Defendants Thrasher Contracting, LLC ("TC") [Doc. 7] and Michael Thrasher ("Thrasher") [Doc. 15]. Plaintiffs seek default judgment against Defendants for $93,337.57 plus attorney fees, costs, and other expenses of litigation as a result of two breached insurance policies and one breached settlement agreement. For the following reasons, both Motions are **GRANTED.**

## I. LEGAL STANDARD

The legal standard for granting a default judgment was recently set forth by the Eleventh Circuit in *Surtain v. Hamlin Terrace Foundation:*

> When a defendant has failed to plead or defend, a district court may enter judgment by default. Fed.R.Civ.P. 55(b)(2). Because of our "strong policy of determining cases on their merits," however, default judgments are generally disfavored. *In re Worldwide Web Sys., Inc.,* 328 F.3d 1291, 1295 (11th Cir.2003). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir.2005) (alteration omitted) (quotation marks omitted). Entry of default judgment is only warranted when there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975).

Although *Nishimatsu* did not elaborate as to what constitutes "a sufficient basis" for the judgment, we have subsequently interpreted the standard as be-

ing akin to that necessary to survive a motion to dismiss for failure to state a claim. *See Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n. 41 (11th Cir.1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *See Wooten v. McDonald Transit Assocs., Inc.,* 775 F.3d 689, 695 (5th Cir.2015) (stating in the context of a motion for default judgment, "whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6)").

When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965). *Surtain v. Hamlin Terrace Found.,* 789 F.3d 1239, 1244–45 (11th Cir.2015).

## II.  BACKGROUND

The factual allegations of the Complaint, accepted as true, are as follows.

### A.  Original Insurance Policies

Defendant TC held insurance policies (collectively, the "Policies") through National Fire Insurance Company of Hartford and Valley Forge Insurance Company. (Compl. ¶ 8); [Doc. 17, Exs. A, B.] Under the Policies, the policyholder pays an initial, estimated premium based on information submitted by the policyholder and/or its insurance broker regarding the policyholder's estimated exposure for the effective dates of coverage. (Compl. ¶ 20); [Doc. 17–2 at 18, 32.] Because initial premiums are based on estimates of exposure, the Policies are subject to final audits at the end of coverage year. These final audits can result in the policyholder owing additional premiums ("audit premiums"). [Doc. 17–2 at 32.] The policyholder may also be required to reimburse the insurer for certain deductible obligations ("deductible losses") "for amounts associated with claims submitted for coverage under the Policies, including paid losses, expenses, claims handling fees, taxes, surcharges and interest." (Compl. ¶ 13); [Doc. 17–2 at 15, 30.]

Plaintiffs allege that Defendant TC is delinquent on its accounts under Plaintiffs' Policies in the total amount of $86,499.00. (Compl. ¶ 54.) This total comprises $75,234.00 in past due audit premiums (*id.* ¶ 48), and $11,265.00 in past due deductibles (*id.* ¶ 50). Plaintiffs have submitted the invoices they sent to TC evidencing these amounts due. [Doc. 17, Exs. C–H.]

### B.  Settlement Agreement and Personal Guaranty

Plaintiffs allege that when Defendant TC defaulted on the Policies, Plaintiffs negotiated a settlement agreement with Michael Thrasher, owner of Thrasher Contracting, on behalf of his company, and Michael Thrasher personally guaranteed the payments:

26.  On May 22, 2014, TC acknowledged and agreed that it owed Plaintiffs

$86,499 for the audits of the Policies and outstanding deductibles.

27. On May 22, 2014, TC agreed to remit full payment to Plaintiffs in 12 monthly installments and pay Plaintiffs interest at 5% per annum.

28. On May 22, 2014, TC and Thrasher agreed to provide the personal guaranty of Michael Thrasher as security for TC's payment obligations.

29. On May 22, 2014, Defendants agreed to execute a written settlement agreement and personal guaranty memorializing the Parties' agreement.

30. Pursuant to the May 22, 2014 agreement, TC and Thrasher are jointly and severally liable to Plaintiffs.

31. On June 2, 2014, Plaintiffs provided Defendants with a written settlement agreement, including the personal guaranty of Thrasher memorializing the Parties' May 22, 2014 agreement in writing. Defendants did not dispute the terms and conditions of the written settlement agreement or personal guaranty.

(Compl. ¶¶ 26–31.) When Defendants "failed" and "refused" to pay the balance due under the settlement agreement (or, for that matter, the Policies), Plaintiffs filed this lawsuit on June 25, 2014. (Id. ¶ 34.) The Complaint contains seven Counts:

| Count | Claim | Against | Based on | Relief Sought |
|---|---|---|---|---|
| 1 | Breach of Contract | Both Defendants | Settlement Agreement | $93,337.57 |
| 2 | Breach of Contract | Thrasher | Personal Guaranty | $93,337.57 |
| 3 | Breach of Contract | TC | Policies | $86,499.00 |
| 4 | Unjust Enrichment | TC | Policies | $86,499.00 |
| 5 | Account Stated | TC | Policies | $86,499.00 |
| 6 | Breach of Covenant of Good Faith & Fair Dealing | Both Defendants | Settlement Agreement, Personal Guaranty, and Policies | $93,337.57 |
| 7 | Attorney Fees | Both Defendants | | All allowed under O.C.G.A. § 13–6–11 |

## III. ANALYSIS

Taking the claims in logical order, Plaintiffs first allege that TC breached the terms of the Policies and therefore owes, under various theories of liability, $86,499.00.

### A. Counts 3, 4, and 5—TC's Breach of the Policies

██ Count 3 contains the most straightforward insurance breach of contract claim. The elements of a breach of contract claim in Georgia are: (1) a valid contract; (2) material breach of its terms; and (3) resultant damages to the party having the right to complain that the contract has been broken. See TechBios, Inc. v. Champagne, 301 Ga.App. 592, 688 S.E.2d 378, 381 (2009); TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc., 880 F.Supp. 1572, 1583 (N.D.Ga.1995).[1] Accepting the facts alleged as true, there is no question that Plaintiffs and TC had

1. Plaintiffs imply that Georgia law applies to their contract-based claims. (See Doc. 1

valid contracts,[2] that TC materially breached the terms of those contracts by not remitting deductible payments or audit premiums, and that Plaintiffs were damaged by TC's non-payment. Accordingly, Plaintiffs' Motion for Default Judgment as to Count 3 is **GRANTED.**

Counts 4 and 5 are duplicative, alternative counts, seeking recovery of the same $86,499.00 owed under the Policies. Plaintiff's Motion is **DENIED** as to those counts because "Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages." *Georgia Ne. R. Co. v. Lusk,* 277 Ga. 245, 587 S.E.2d 643, 644 (2003).

## B. Count 1—TC's Breach of the Settlement Agreement

Plaintiffs allege an oral settlement agreement with TC followed by a lack of any dispute as to a written memorialization of the terms of that agreement. Plaintiffs allege that TC then breached that oral agreement. While Plaintiffs submitted copies of the Policies, Plaintiffs did not submit the written memorialization of the settlement agreement—despite the Court requesting "[a]ny other documentation that supports [Plaintiffs'] request for judgment." (Doc. 16 at 1.)

Nonetheless, the first question is whether a valid agreement was formed. "To constitute a valid [written or oral] contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1; *see also Turner Broad. Sys., Inc. v. McDavid,* 303 Ga.App. 593, 693 S.E.2d 873, 877 (2010) (citing O.C.G.A. § 13-3-1). Ability to contract, consideration, and subject matter are satisfied, leaving only the question of mutual assent. And it is noted that "[e]ven complex or expensive contracts may be oral, as long as the evidence establishes the parties' mutual assent to all essential terms of the contract." *Turner Broad. Sys.,* 693 S.E.2d at 878 (citations omitted). "In determining whether there was a mutual assent, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent." *Id.* (quotation and citations omitted).

Plaintiffs sufficiently allege mutual assent to all essential terms of the con-

¶ 65.) The Court's jurisdiction is based on diversity of citizenship, so the Court applies the choice-of-law rules of the forum state of Georgia. *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.,* 550 F.3d 1031, 1033 (11th Cir.2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). An insurance policy is a contract, and for a choice-of-law determination for contract interpretation, Georgia follows the traditional doctrine of lex loci contractus. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 135 F.3d 750, 752 (11th Cir.1998) (citing *Gen. Tel. Co. of Southeast v. Trimm,* 252 Ga. 95, 311 S.E.2d 460,

461 (1984)); *Convergys Corp. v. Keener,* 276 Ga. 808, 582 S.E.2d 84, 87 (2003) (reaffirming Georgia's adherence to the traditional conflict of law rules). It appears all of the contracts in this case were both formed and performed—or at least *intended* to be performed—in Georgia. Accordingly, Georgia law applies to the contract-based claims in this case.

**2.** In support of their allegations, Plaintiffs submitted an affidavit, a copy of the Policies, and invoices showing TC's payments (and also lack thereof) under the Policies.

tract. Dennis E. Kadian, counsel for Plaintiffs, submitted a declaration in which Kadian affirms that Michael Thrasher acknowledges TC's debt and agreed to the above payment plan for TC (12 monthly payments and 5% per annum interest). Thrasher also agreed, during that conversation, to guaranty the full payment of $93,337.57. [Doc. 15–2 ¶¶ 4–6.] A reasonable person in Kadian's shoes would have ascribed to Thrasher and TC an intent to be bound by the essential payment and guaranty terms based on these manifestations of assent. Thus, a valid oral agreement was formed. And based on the allegations that Defendants did not pay, which the Court accepts as true, Defendants materially breached the settlement agreement by not paying and Plaintiffs were damaged as a result. Accordingly, Plaintiffs' Motion is **GRANTED** as to Count 1. As double recovery is not permitted, the relief granted under Count 3 is included in this amount.

### C. Count 2—Michael Thrasher's Personal Guaranty

■ Given the above analysis, the Court finds Michael Thrasher personally liable for the $93,337.57 as a result of his validly formed personal guaranty. To be clear, Plaintiffs did not allege that Michael Thrasher ever signed a written guaranty, and the Statute of Frauds requires guarantees to be in writing and signed by the guarantor or someone the guarantor authorizes. O.C.G.A. § 13–5–30(2). However, under the Georgia Civil Practice Act, the Statute of Frauds is an affirmative defense, O.C.G.A. § 9–11–8(c); *see also Southern Land, Timber & Pulp Corp. v. Davis & Floyd Engineers, Inc.*, 109 Ga. App. 191, 135 S.E.2d 454, 461 (1964), and Georgia law is clear that the Statute of Frauds is waived if not actively and timely

raised by the defendant. *See Signsation, Inc. v. Harper*, 218 Ga.App. 141, 460 S.E.2d 854, 856 (1995); *Life Care Ambulance, Inc. v. Hosp. Auth. of Gwinnett Cnty.*, 202 Ga.App. 864, 415 S.E.2d 502, 504 n. 1 (1992); *Brantley Co. v. Simmons*, 196 Ga.App. 233, 395 S.E.2d 656, 657 (1990); *S. Intermodal Logistics, Inc. v. Smith & Kelly Co.*, 190 Ga.App. 584, 379 S.E.2d 612, 614 (1989); JOHN K. LARKINS, JR., GEORGIA CONTRACTS: LAW AND LITIGATION § 6:1 (2nd ed.2011). Obviously, Thrasher has not raised a Statute of Frauds affirmative defense, as he has defaulted.

The essential terms of the guarantee contract therefore are fairly simple: Thrasher was obligated to pay Plaintiffs $93,337.57 in 12 monthly installments if TC failed to do so. TC did not do so, and Thrasher's subsequent failure to pay left him in material breach of that contract, causing Plaintiffs' damages. Accordingly, Plaintiff's Motion is **GRANTED** as to Count 2 for Michael Thrasher's breach of his personal guaranty. As both Defendants are therefore liable for the full $93,337.57 sought by Plaintiffs, the bar on double recovery removes the necessity for the Court to consider Count 6. Plaintiff's Motion is **DENIED** as to that Count.

### D. Count 7—Attorney Fees

■ Plaintiffs argue they are entitled to attorney fees, costs, and other expenses of litigation under O.C.G.A. § 13–6–11. In Georgia,

[i]f a plaintiff in its original complaint puts the defendant on notice that it is seeking attorney fees and expenses under O.C.G.A. § 13–6–11 as part of the relief prayed for in the case, and if a default judgment is subsequently entered against the defendant for failing to answer the complaint, then the plaintiff

is entitled to an award of attorney fees and expenses as a matter of law from the defendant having caused unnecessary trouble and expense.

*Water's Edge Plantation Homeowner's Ass'n, Inc. v. Reliford,* 315 Ga.App. 618, 727 S.E.2d 234, 237 (2012) (citations omitted).

Defendant TC owed $86,499.00 and did not pay despite being sent proper invoices. Both Defendants acknowledged the debt and entered into an oral settlement agreement in which they agreed to pay $93,337.57. Again, Defendants did not pay. Instead, Defendants required Plaintiffs to seek court intervention in order to get the funds owed to them.

Plaintiffs specifically allege that, "[b]y refusing to remit payment to Plaintiffs for the insurance coverage provided by Plaintiffs and in accordance with the settlement agreement without just cause, Defendants have acted in bad faith and put Plaintiffs to unnecessary trouble and expense by forcing Plaintiffs to file this action for damages." (Compl. ¶ 75.) And "[b]y refusing to remit payment to Plaintiffs ... without just cause ... Defendants have been stubbornly litigious and have put Plaintiffs to unnecessary trouble and expense by forcing Plaintiffs to file this action for damages." (*Id.* ¶ 74.) The Court agrees but has no proper fee itemization before it. Accordingly, Plaintiffs are **DIRECTED** to file a proper itemization of fees no later than September 8, 2015.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motions for Default Judgment [Docs. 7, 15]. As requested, [Doc. 7-1 at 3], Plaintiffs are **GRANTED:**

1. Leave to file an interest calculation as of the date of this Order; and

2. Permission to file with the clerk a request to tax costs pursuant to Rule 54. All of these submissions are due by September 8, 2015.