A89A2065. HOLTZENDORF et al. v. SECKINGER et al.

(393 SE2d 13)

McMurray, Presiding Judge.

Plaintiffs R. L. Holtenzdorf and Mrs. Agnes Irene Holtzendorf brought suit against Malcolm Seckinger, Seckinger Realty Company, and Joseph H. Roberts. The complaint, as amended, was couched in six counts. It was alleged that plaintiffs owned, as tenants in common, certain property in Glynn County, Georgia, known as Oak Grove Island, consisting of approximately 680 acres; that, in June or July 1986 defendant Seckinger, a licensed real estate broker as agent of Seckinger Realty Company, enlisted defendant Roberts, a close acquaintance and confidant of plaintiff R. L. Holtzendorf, in "a scheme to inveigle plaintiffs to sell Oak Grove Island, the purpose and intent being to produce a real estate commission for himself [defendant Malcolm Seckinger]"; that defendants, acting in concert, conspired to inveigle the sale of Oak Grove Island in order to obtain and split the real estate commission derived from the sale; and that in July 1986 defendant Roberts, who was not a licensed real estate broker, associate broker or salesperson, "approached plaintiff R. L. Holtzendorf and wheedled out of said plaintiff an oral promise that plaintiffs would sell Oak Grove Island for $2,500,000.00 net in cash."

Plaintiffs further alleged that they previously refused to consider offers by one George Skarpalezos to purchase Oak Grove Island and that defendants "cunningly avoided disclosure that they were acting on behalf of Skarpalezos" in connection with the purchase of Oak Grove Island; that, thereafter, defendant Roberts brought plaintiffs a contract which identified Skarpalezos and one Harry Driggers as prospective purchasers of the property; and that, considering themselves "bound, morally if not legally, by plaintiff R. L. Holtzendorf's promise to sell for $2,500,000.00 net in cash . . . plaintiffs signed said contract under date of August 14, 1986."

A copy of the contract was attached to the complaint as an exhibit. It recites that plaintiffs were to sell Oak Grove Island for $2,600,000 in cash. Plaintiffs signed the contract as sellers; George Skarpalezos and Harry Driggers signed the contract as buyers; defendant Malcolm Seckinger signed the contract as a broker; and defendant Roberts signed the contract "as his interest may appear."

A key provision of the contract reads: "At the time of closing, Seckinger Realty Company will receive the sum of $25,000 for their services and Mr. Joe H. Roberts will receive $75,000 for his option rights and other services performed on the sale of the property. This sum is included in the selling price of $2,600,000.00 and will be paid from such selling price leaving the seller . . . the sum of $2,500,000.00 for their island."

With regard to the contract, the complaint alleged that "plain-

tiffs were not aware of [an] inconsistent provision regarding payment of transfer taxes [by the sellers], which would reduce the net proceeds to become due them; nor did they attach any significance to the reference to defendant Roberts' 'option rights'; nor were they aware of the provisions of O.C.G.A. § 43-40-30 making it unlawful for defendant Roberts to act as a real estate broker, associate broker or salesperson." It was alleged further that defendant Roberts did not have any "option rights" in the property and that the reference to "option rights" in the contract was nothing more than a "thinly veiled disguise" for a $75,000 real estate commission, which defendant Roberts sought with the "knowing assistance" of defendant Malcolm Seckinger.

The complaint went on to allege that following the execution of the contract, the parties learned that plaintiffs' title to Oak Grove Island was not merchantable and insurable and that title could only be perfected via judicial proceedings; that, thereafter, Harry Driggers withdrew from the contract; but that Skarpalezos affirmed his intention to buy Oak Grove Island if plaintiffs were able to convey merchantable, insurable title. In this regard, plaintiffs alleged that up until December 31, 1986, defendants repeatedly represented to plaintiffs that Skarpalezos was able to pay the full purchase price of the property; that the representations were false and defendants either knew the representations were false or were ignorant about the truth of the representations; that plaintiffs were unaware of the falsity of the representations and relied upon them before taking judicial action to cure the defects in their title; and that the proceedings to quiet title were complex and plaintiffs borrowed and expended more than $100,000 in connection with that action.

It was also alleged that "[i]n order to take advantage of the capital gains treatment afforded by the Federal tax laws in effect in 1986, and relying on defendants' false representations, plaintiffs conveyed Oak Grove Island to Skarpalezos Realty Co., Inc. (as designated by George Skarpalezos) on December 31, 1986, and accepted in return the promissory note of Skarpalezos Realty Co., Inc., secured by a purchase money deed to secure debt and contingent on satisfactory completion of the . . . quiet title action"; that in June 1987 plaintiffs perfected title in Skarpalezos Realty Co., Inc., subject to the purchase money deed to secure debt; and that, "[i]n the meantime" plaintiffs learned that Skarpalezos was unable to pay the $2,600,000 purchase price of the property as represented by defendants.

The complaint went on to allege: "At that point, as a practical matter, plaintiffs could not back out of the enormous expenditure which they had undertaken in consequence of defendants' false representations, and they had further committed themselves to very substantial income tax liabilities based on the December 31, 1986, sale

. . . . Taking advantage of the situation, Skarpalezos bargained to make a partial payment on the . . . promissory note with plaintiffs refinancing the principal balance of the note, in the amount of $2,000,000.00 themselves. . . . [D]efendants refused to allow the partial payment to be made on [the] promissory note on June 22, 1987, without payment of the real estate commissions provided by the original contract, and Skarpalezos Realty Co., Inc. and its attorney, coerced by defendants, refused to carry out the transaction without satisfaction to defendants. . . . [P]laintiffs were forced to accept only a partial payment and the promise of Skarpalezos Realty Co., Inc. to pay a balance in the amount of $2,000,000.00. . . . Moreover, plaintiffs were forced to pay defendant Roberts an illegal real estate commission of $18,000.00 and give said defendant a promissory note in the amount of $57,000.00 for the balance of the illegal commission claimed by defendant Roberts."

With regard to defendants Malcolm Seckinger and Seckinger Realty Company, plaintiffs also alleged that defendants Malcolm Seckinger and Seckinger Realty Company "assumed the relationship of [plaintiffs'] agent — that relationship being confidential and fiduciary"; that these defendants were paid a $25,000 real estate commission in connection with the sale of Oak Grove Island; and that, in fact, the commission was not earned.

Summing up, the complaint sought general and punitive damages for deceit, fraud and unfair trade practices (Count 1), general damages for breach of contract (Count 2), $18,000 (paid to defendant Roberts) for violation of OCGA § 43-40-30 (b) (Count 3), judgment declaring void the $57,000 promissory note executed by plaintiffs in favor of defendant Roberts (Count 4), cancellation of the $57,000 promissory note (Count 5) and judgment against defendants Malcolm Seckinger and Seckinger Realty Company in the amount of $25,000 for money had and received (Count 6).

Defendants Malcolm Seckinger and Joseph H. Roberts answered the complaint and denied any liability to plaintiffs whatsoever. Defendant Seckinger Realty Company has not been served and is not involved in this appeal. Following discovery, defendant Malcolm Seckinger moved for summary judgment. The motion was granted and plaintiffs appealed.

In support of his summary judgment motion, defendant Malcolm Seckinger submitted an affidavit wherein he testified that he was told by defendant Roberts that Roberts had an option to purchase Oak Grove Island for $2,500,000; that he knew that George Skarpalezos was interested in purchasing the island; that, after inspecting the island, Skarpalezos was willing to purchase the island for a total of $2,600,000; and that the money was to be divided as follows: $2,500,000 to plaintiffs, $75,000 to defendant Roberts for his option

and $25,000 to Malcolm Seckinger as a sales commission. Defendant Seckinger testified further that defendant Roberts was to have his option reduced to written form so it could be transferred to Skarpalezos; that plaintiff R. L. Holtzendorf did not want to have the option transferred to Skarpalezos in that manner — plaintiffs preferred a standard sales agreement; that, therefore, he prepared such a standard contract; and that the contract was executed on August 14, 1986. Finally, defendant Seckinger testified that it was his understanding throughout the transaction that defendant Roberts had an option to purchase the island; that defendant Roberts was not paid a sales commission but was paid for his option rights; that he had no contact with plaintiffs before plaintiffs were presented with a sales contract; that he did not make representations to plaintiffs concerning Skarpalezos' ability to purchase the island; that he did not withhold information or agree with defendant Roberts to withhold information from plaintiffs; and that he was not involved in any of the negotiations between plaintiffs and Skarpalezos following the execution of the contract on August 14, 1986.

Defendant Malcolm Seckinger gave a deposition which essentially reiterated the facts set forth in his affidavit. In his deposition, however, defendant Seckinger added that at the time of the closing in June 1987 plaintiffs agreed to pay him a $25,000 commission and that plaintiffs were represented by counsel throughout that transaction.

In a deposition, plaintiff R. L. Holtzendorf deposed that he owned Oak Grove Island with his mother; that he was now retired at age 64; that he previously owned and operated a mobile home business and a loan company; and that he previously held political offices, including the mayoralty of Brunswick. Plaintiff deposed further that defendant Roberts was a friend for many years but he did not know defendant Malcolm Seckinger personally; that in connection with the sale of the island, he dealt strictly with defendant Roberts and never discussed the sale with defendant Seckinger; that he did not give defendant Roberts an option to sell the island but agreed to sell the island to defendant Roberts for $2,500,000 net; that Roberts had no interest in the island — only a verbal agreement with plaintiffs; and that he did not care if Roberts purchased the property for $2,500,000 or found someone else to purchase it for more. Plaintiff also deposed that after agreeing to sell the island to Roberts, Skarpalezos told plaintiff that he was interested in purchasing the island and that Skarpalezos suggested a deal could be arranged without defendant Roberts. In this regard, plaintiff deposed he replied to Skarpalezos by saying that that could not be done because he had an agreement with defendant Roberts.

With regard to the August 14, 1986, contract, plaintiff R. L. Holtzendorf deposed that he was given ample opportunity to read

and review the contract; that he was not prevented from reading the contract; that he was not under duress when he signed the contract; and that he "scanned" the contract. Plaintiff added, however, that he did not know the contract called for plaintiffs to pay the transfer tax.

With regard to allegations of fraud, plaintiff R. L. Holtzendorf deposed that he did not think Skarpalezos had the money to close; that representations that he did have the money were false; and that the representations were made by Skarpalezos and defendant Roberts. Plaintiff allowed, however, that perhaps Roberts was simply under the same impression that he was under, i.e., that Skarpalezos had the money lined up to close the deal.

Asked what defendant Seckinger did to cause plaintiffs damage, plaintiff R. L. Holtzendorf replied: "I did not get my $2.5 million net. That was my agreement, and by the time I found out I wasn't getting it, I was so far in debt that I had no choice but to close."

Skarpalezos deposed that he told plaintiff R. L. Holtzendorf that he was interested in purchasing the island and plaintiff replied that he would have to go through defendant Roberts since he had an option on the island; that he had substantial assets (exceeding $2 million) and did not think he would have a problem obtaining the financing to purchase the island; that he did not discover that he would be unable to obtain financing until after he signed the August 14, 1986, contract; and that he did not discuss his financing problems with either defendant. Insofar as defendant Roberts' option was concerned, Skarpalezos deposed that it did not matter to him whether Roberts' option was oral or written — that he had given oral options in the past and stood by them. In this regard, Skarpalezos stated that there are still some businessmen willing to honor their oral agreements.

Skarpalezos also deposed that defendant Malcolm Seckinger was the realtor in the transaction; that defendant Roberts was paid for his option; and that when everything was settled, plaintiffs and defendant Roberts agreed that Roberts would be paid over time. In this regard, Skarpalezos asserted that "nobody's arm was twisted" and that plaintiffs were represented by counsel.

Defendant Roberts was deposed, too. He deposed that he had numerous conversations with plaintiff R. L. Holtzendorf concerning the sale of Oak Grove Island and told him he wanted the "first pop" at the island; that he originally thought about purchasing the island to develop it himself; that plaintiff R. L. Holtzendorf finally agreed to sell the island for $2,500,000 net and told defendant Roberts he had an option to buy the island for 90 days; that plaintiff R. L. Holtzendorf wanted him to advise plaintiffs about tax consequences which plaintiffs would face; and that he and plaintiff R. L. Holtzendorf shook hands on the deal. Defendant Roberts also deposed that he wanted to transfer his option to Skarpalezos but plain-

tiff R. L. Holtzendorf did not want to let him out of the deal so fast because plaintiffs needed his advice about taxes and other matters; that, in order to keep defendant Roberts in the deal until it closed, plaintiff R. L. Holtzendorf instructed defendant Roberts to draw the contract for $2.6 million and include the real estate commission and defendant Roberts' cut in the contract.

Insofar as the contract referred to defendant Roberts' option and "other services," defendant Roberts deposed that he was to give plaintiffs tax advice and "to handle all the dealings because [plaintiff R. L. Holtzendorf did not] want anything to do with [Skarpalezos]." In other words, plaintiff R. L. Holtzendorf "didn't want to be bothered with anything." In that regard, defendant Roberts deposed that he tried his best to represent plaintiffs' interests in the sale of the property. Finally, with regard to Skarpalezos' ability to close the deal, defendant Roberts deposed that he told plaintiff R. L. Holtzendorf in December 1986 that Skarpalezos would not be able to come up with $2.5 million; but that plaintiff R. L. Holtzendorf did not believe it because the bank told him that Skarpalezos was good for the money. *Held*:

1. Plaintiffs insist that genuine issues of material fact remain with regard to defendant Malcolm Seckinger's liability — but we find none. Defendant Seckinger made no representations to plaintiffs concerning the ability of Skarpalezos to obtain financing. Evidence that defendant Roberts made such representations is thin at best. Although he thought defendant Roberts vouched for Skarpalezos' ability to come up with the money prior to the December 31, 1986, closing, plaintiff R. L. Holtzendorf allowed on reflection that defendant Roberts might have simply been under the same impression that he was under, i.e., that Skarpalezos was able to obtain sufficient financing. In any event, there is no reason to impute the representations of defendant Roberts to defendant Seckinger. There is no evidence that defendant Roberts was the agent of defendant Seckinger, and there is no evidence that defendants conspired to defraud plaintiffs. See *McCulley v. Dunson*, 149 Ga. App. 551 (254 SE2d 877). "We are aware that '(t)o show conspiracy . . . it need not appear that the parties met together either formally or informally and entered into any explicit or formal agreement; nor is it essential that it should appear that either by words or writing they formulated their unlawful objects. It is sufficient that two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design.' *Woodruff v. Hughes*, 2 Ga. App. 361, 365 (58 SE 551). But it is also true that '(t)he law should not, and does not, authorize a finding that a conspiracy exists merely because of some speculative suspicion . . .' *Grant v. Hart*, 197 Ga. 662, 680 (30 SE2d 271)." *McCulley v. Dunson*, 149 Ga. App. 551, 554 (2), supra.

Besides, in view of plaintiffs' payment to defendant Seckinger, we cannot see how plaintiffs can now assert that defendant Seckinger was not entitled to earn a real estate commission. After all, plaintiffs paid defendant Seckinger voluntarily and with the apparent advice of counsel. The threatening of legal action by defendant Seckinger (in the event he was not paid) did not constitute "business compulsion" or "economic duress." See *General Motors &c. Corp. v. Bowen Motors*, 167 Ga. App. 463, 467 (306 SE2d 675). As Skarpalezos deposed, "nobody's arm was twisted." If plaintiffs found themselves in an economic crunch, it was an economic crunch of their own making and defendant Seckinger cannot be blamed for it.

Plaintiffs' claim under OCGA § 43-40-30, insofar as it relates to defendant Seckinger, does not withstand scrutiny. Assuming a genuine issue of material fact exists as to whether defendant Roberts disguised a real estate commission as an "option fee" and that defendant Roberts is liable to plaintiffs for the return of the commission, see generally *Grant v. Elder*, 146 Ga. App. 64 (245 SE2d 341), we fail to see defendant Seckinger's liability in this regard. After all, as noted above, there is no evidence that defendant Roberts was the agent of defendant Seckinger in this transaction.

The trial court did not err in granting defendant Malcolm Seckinger's motion for summary judgment.

2. Plaintiffs assert that we should reverse and remand this case because, in ruling upon defendant Seckinger's motion for summary judgment, the trial court erred in failing to consider the record. This we will not do. Assuming arguendo the trial court erred in failing to examine the record, "the error was manifestly harmless. There is nothing in the [record] which raises a genuine issue of material fact. To reverse and remand the case under these circumstances would only serve to prolong litigation and undermine the policy in favor of 'the just, speedy, and inexpensive determination of every action.' CPA § 1 (Code Ann. § 81A-101 [OCGA § 9-11-1]). . . . Accordingly, we will not reverse the grant of summary judgment, even if it affirmatively appears that the trial court erroneously failed to consider a portion of the record, unless the appellant can show that a genuine issue of material fact remains for trial." *Miller Grading Contractors v. Ga. Fed. &c. Assn.*, 247 Ga. 730, 734 (279 SE2d 442). But see *Maddox v. Brown*, 188 Ga. App. 728 (374 SE2d 222).

*Judgment affirmed. Carley, C. J., concurs. Beasley, J., concurs in Division 1 and in the judgment.*

DECIDED MARCH 12, 1990 —
REHEARING DENIED MARCH 28, 1990 —

*Eugene Highsmith,* for appellants.
*Stanley M. Karsman, George M. Rountree,* for appellees.