A99A0569. FRAME et al. v. BOOTH, WADE & CAMPBELL, A
GEORGIA GENERAL PARTNERSHIP.
(519 SE2d 237)

SMITH, Judge.

The law firm of Booth, Wade & Campbell ("Booth") brought suit on a promissory note against Christopher Frame and C.F., Inc., a South Carolina corporation of which Frame was president (collectively "Frame"). The trial court granted Booth's motion for summary judgment, and Frame brings this appeal, contending the trial court erred in several respects. We find no merit in Frame's contentions, and we affirm the judgment.

1. Frame's first enumeration is conditional: He asserts that additional documents filed by Booth in reply to Frame's response to the motion for summary judgment were filed less than thirty days before a ruling was issued on Booth's motion, and *if* the trial court relied upon those documents in granting summary judgment, that was error. OCGA § 9-11-56 (c); see *Custom Lighting &c. v. Hampshire Co.*, 204 Ga. App. 293, 295 (1) (418 SE2d 811) (1992). But in its order denying Frame's motion to vacate the judgment, the trial court expressly denied relying on those documents, stating that they were considered "only in conjunction with [Frame's] pending motion to dismiss, and not on [Booth's] pending motion for summary judgment."

2. Frame contends the trial court erred in awarding summary judgment to Booth on his defense of economic duress. We do not agree.

The record shows that the note forming the subject of the action was for a sum representing attorney fees billed by Booth and unpaid by Frame, together with accrued interest. These fees were incurred in defending an action filed against Frame in July 1990 by Golden Isles Petroleum, Inc., in the United States District Court for the Southern District of Georgia. Booth undertook representation of Frame in the fall of 1990, and received a $20,000 retainer from Frame. That litigation went on for some time, Frame's financial condition worsened, and he did not pay Booth's invoices. He offered Booth his general partnership interest in a real estate venture, but Booth declined and served notice of its intent to withdraw from representation in November 1991. In January 1992, after having completed the withdrawal and after Frame had retained new counsel,

Booth began negotiating for the payment of its fees due and owing. These negotiations culminated in the execution of the note in April 1992. In 1993, when payments on the note were not forthcoming, Booth declared the note in default and accelerated all remaining payments. This action followed.

Answering Booth's complaint, Frame denied executing and delivering the note only "to the extent that the promissory note, which is the subject matter of said allegations, was entered into under duress caused by the Plaintiff." Frame admitted, in response to requests for admission, that he signed and delivered the note and that he had made no payments on the note. His primary defense was that he signed the note under "economic duress."

Duress is recognized as a defense in Georgia; it derives from OCGA § 13-5-6, which provides, in pertinent part: "Since the free assent of the parties is essential to a valid contract, duress, either by imprisonment, threats, or other acts, by which the free will of the party is restrained and his consent induced, renders the contract voidable at the election of the injured party." The duress encompassed by the statute is a form of fraud, in which coercion replaces deception to injure the signer. *Tidwell v. Critz*, 248 Ga. 201, 203 (1) (282 SE2d 104) (1981). But to enable the signer to void the contract, the duress

> must consist of threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will. The threats must be sufficient to overcome the mind and will of a person of ordinary firmness.

(Citations and punctuation omitted.) Id.

Economic duress is a form of the duress recognized in OCGA § 13-5-6:

> "Business compulsion" or "economic duress" involves the taking of undue or unjust advantage of a person's economic necessity or distress to coerce him into making a contract and is also recognized as a contractual defense. [Cits.] However, a duress claim of this nature must be based upon acts or conducts of the opposite party which are wrongful or unlawful. [Cits.]

*Charter Med. Mgmt. Co. v. Ware Manor*, 159 Ga. App. 378, 381 (3) (283 SE2d 330) (1981). Georgia courts are reluctant to void contracts,

however.[1] When the signer is sophisticated in business matters and has access to and in fact obtains advice of counsel, the defense of duress is not available to void the contract.

> One may not void a contract on grounds of duress merely because he entered into it with reluctance, the contract is very disadvantageous to him, the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreement.

(Citation and punctuation omitted.) *Tidwell*, supra at 204 (1).

Moreover, even if acts could otherwise have been construed as sufficient duress to void a note, reliance upon the defense of duress may be waived. In *Tidwell*, this court found such a waiver when the obligor, a "highly educated professional," took three months to sign the employment contract in issue, during which time he consulted with counsel of his own choosing. Id. at 204 (1). In *Ware Manor*, a waiver was found when the debtor paid another note to the same creditor, and the paid note was part of the same transaction executed under the same alleged duress. Id. at 381-382 (3).

Attorneys have a statutory lien on clients' papers and money in their possession, and they "may retain the papers until the claims are satisfied." OCGA § 15-19-14 (a). But Frame maintains that Booth took advantage of his economic hardship by withdrawing from representation while holding his "file" and refusing to forward papers to his new counsel, although trial was approaching, until Frame agreed to sign the note. He relies upon Standard 22 of the State Bar Rules to show that this conduct was "wrongful or unlawful." The standard provides as follows:

> (a) If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.
>
> (b) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including

---

[1] Although recognized in *Ware Manor*, we have found no Georgia decision voiding a contract under this theory. See, e.g., *Miller v. Calhoun/Johnson Co.*, 230 Ga. App. 648, 650 (4) (497 SE2d 397) (1998) (financial difficulties alone do not constitute legal duress); *Hovendick v. Presidential Fin. Corp.*, 230 Ga. App. 502, 505 (3) (497 SE2d 269) (1998) (economic distress not legal duress); *Holtzendorf v. Seckinger*, 195 Ga. App. 177, 183 (1) (393 SE2d 13) (1990) (threat of legal action not economic duress); *Gen. Motors Acceptance Corp. v. Bowen Motors*, 167 Ga. App. 463, 467-468 (1) (C) (306 SE2d 675) (1983) (no evidence of economic duress); *Woods v. Wright*, 163 Ga. App. 124, 125-126 (292 SE2d 545) (1982) (unfavorable bargaining position not legal duress because legal remedies available).

giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with applicable laws and rules.

A violation of this standard may be punished by a public reprimand.

We do not agree that Frame has shown this conduct to be sufficient to satisfy the requirements for economic duress. First, the Supreme Court administers the Bar Standards. Violation of a standard alone "does not establish civil liability of attorneys for their professional misconduct, nor does it create remedies in consequence thereof," *Allen v. Lefkoff, Duncan, Grimes & Dermer*, 265 Ga. 374 (1) (453 SE2d 719) (1995), and it does not provide a basis for criminal liability. Id. at 374, n. 3.

Second, Frame has not shown a violation of Standard 22. The record includes clear evidence that Booth complied with the notice provisions of the standard. Under the standard, an attorney is required to deliver to the client only those papers "to which the client is entitled." If, under OCGA § 15-19-14 (a) the attorney is lawfully entitled to retain the papers until the fee is paid, the client is not "entitled" to those papers until then. The record shows that when Frame agreed to sign the note, his papers were turned over to his new attorney.

Perhaps more importantly, although Frame asserts he was prejudiced greatly by the withholding of his papers, he has presented no evidence of this prejudice or any other injury. He was represented by counsel, and counsel took no steps to have the papers turned over during the months in which the terms of the note were being negotiated.[2]

Finally, Frame was a sophisticated businessman, as evidenced by the nature of the Golden Isles litigation, and he had access to and consulted with counsel of his choice for three months before signing the note. Even if we were to conclude that Booth's actions constituted economic duress, we therefore would also conclude that he waived any reliance upon this defense. *Tidwell*, supra. No question exists that Booth presented a prima facie case to recover on the note. Frame admitted signature, delivery, and non-payment. Once the prima facie case was made out, the burden shifted to Frame to come forward with evidence supporting a defense preventing the grant of summary judgment. See *Braswell v. Bank of Early*, 229 Ga App. 445, 447 (494 SE2d 277) (1997). He did not do so, and the trial court did not err in

---

[2] A letter from Frame to Booth dated January 28, 1992 indicates clearly that new counsel has been retained. The note was not executed until April 1992.

entering summary judgment against him on his defense of economic duress.

3. Frame maintains that a jury issue existed with regard to the reasonableness of the attorney fees owed to Booth and that the trial court therefore erred in awarding summary judgment on this issue. We do not agree.

Frame relies upon *Sosebee v. McCrimmon*, 228 Ga. App. 705 (492 SE2d 584) (1997). In that case, an attorney was retained and the fee was agreed upon as an hourly rate. The attorney withdrew from representation and the client was forced to retain other counsel and pay a substantial fee to new counsel to cover the same ground that had been covered by original counsel. We held in *Sosebee* that under those circumstances, a jury issue existed because "there can arise an occasion when the value of the benefit received by a party must be reduced for reasons of equity or justice. [Cit.]" Id. at 709.

But in this case, the reasonableness of Booth's fee simply is not at issue, because this action was a suit on a note that included a provision authorizing the 15 percent attorney fees permitted under OCGA § 13-1-11 (a). "A plaintiff who is entitled to a summary judgment on a document establishing 'evidence of indebtedness,' within the meaning of OCGA § 13-1-11 (a) is also entitled to a judgment for attorney fees thereon." (Citations and punctuation omitted.) *Dalcor Mgmt. v. Sewer Rooter*, 205 Ga. App. 681 (1) (423 SE2d 419) (1992). The fee to be awarded therefore was only a matter of mathematical calculation, and the trial court did not err in granting summary judgment on the issue of attorney fees.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED JUNE 3, 1999 — CERT. APPLIED FOR.

*Savage & Turner, Robert B. Turner, Robert S. Kraeuter*, for appellants.

*McGuire, Woods, Battle & Boothe, Douglas N. Campbell, Edward H. Nicholson, Jr.*, for appellee.