## A02A0092. COOPERATIVE RESOURCE CENTER, INC. v. SOUTHEAST RURAL COMMUNITY ASSISTANCE PROJECT, INC.

(569 SE2d 545)

JOHNSON, Presiding Judge.

Cooperative Resource Center, Inc. ("CRC") appeals from the trial court's grant of summary judgment to Southeast Rural Community Assistance Project, Inc. ("SERCAP") on SERCAP's claim for breach of a guaranty executed by CRC. CRC admits that it executed the guaranty and that it has failed to pay SERCAP as required by the terms of the guaranty. CRC's sole argument on appeal is that the trial court erred in finding that SERCAP was entitled to judgment as a matter of law on its claim, despite CRC's defense that it executed the guaranty under duress. We agree with the trial court and affirm its judgment.

The following facts are undisputed. SERCAP is a nonprofit corporation which offers a variety of services to rural communities, including making low interest loans to nonprofit organizations to be used in connection with housing developments and other projects. In 1997, SERCAP loaned $100,000 to Affirmative Position on Parent Leadership Education, Inc. ("APPLE"). APPLE was to use the money to pay pre-development costs in connection with a housing project known as Genesis Gardens. APPLE executed a promissory note in favor of SERCAP for $100,000, along with a security deed.

At the time the loan was made, APPLE and CRC were co-general partners of Genesis Gardens, L.P., the partnership formed to develop the housing project. A short time later, CRC's executive director, William Taylor, called SERCAP to discuss concerns that he had about APPLE, namely that APPLE did not appear to be using the loan proceeds for the Genesis Gardens project. Investigations by CRC and SERCAP revealed numerous improprieties relating to the project, and it became apparent that APPLE was not likely to repay the loan.

When the problems with APPLE came to light, several of the

project's lenders became concerned about moving forward with the project. CRC, APPLE's partner in the project, wanted the project to go forward. CRC had invested money in the project, and it would receive a developer's fee of several hundred thousand dollars if the project was completed. CRC then began talking to the lenders to determine what would be required to allow the project to continue.

The lenders requested certain assurances from CRC in exchange for their continued involvement in the project. They sought the withdrawal of APPLE from the partnership, and APPLE withdrew, transferring its interest to CRC. The lenders also requested that CRC obtain releases from entities which might assert claims against the housing projects; CRC obtained the releases.

In late 1997 or early 1998, CRC contacted SERCAP and indicated that it was interested in continuing the project and repaying the amount loaned to APPLE. Diane Calloway, an attorney representing Genesis Gardens, L.P., acting on behalf of CRC, contacted SERCAP's attorney, Charles Fox. Calloway proposed that CRC repay SERCAP the principal amount of the loan and that SERCAP agree not to pursue any claim against the property or the Genesis Gardens partnership. Calloway drafted and sent to Fox two documents. One was an estoppel certificate to be signed by SERCAP providing that SERCAP would not pursue any claim against the Genesis Gardens property or the Genesis Gardens partnership in connection with the loan. The other was a guaranty agreement to be signed by CRC, providing that CRC would repay SERCAP the principal amount of the loan. After discussion and negotiations, the parties executed the documents.

APPLE never made any payments to SERCAP on the loan. And when CRC's obligation on the guaranty came due, CRC made no payments. SERCAP sued CRC on the guaranty and moved for summary judgment. CRC urged that it signed the guaranty under duress, because its very survival and the project's survival depended on the construction loan closing before imminent federal and state deadlines passed. According to CRC, SERCAP took undue advantage of CRC's economic distress, which SERCAP caused by threatening to assert a claim against the property (when SERCAP actually had no valid interest in the property), and negligently loaning the money to APPLE. The trial court properly granted SERCAP's motion for summary judgment.

Under Georgia law, duress consists of "imprisonment, threats, or other acts, by which the free will of the party is restrained and his consent induced."[1] "Business compulsion" or "economic duress" in-

---

[1] OCGA § 13-5-6.

volves the taking of undue or unjust advantage of a person's economic necessity or distress to coerce him into making a contract and is recognized as a contractual defense.[2] A duress claim must be based on acts or conduct of the opposing party which are wrongful or unlawful.[3] Georgia courts are reluctant to void contracts, and we have found no Georgia decision voiding a contract on the theory of economic duress.[4] And, in any event, when the signer of an agreement is sophisticated in business matters and has access to and in fact obtains advice of counsel, the defense of duress is not available to void the contract.[5]

In this case, CRC is a business entity that regularly enters into complex, multi-million dollar projects. In Taylor's words, CRC is one of the most experienced entities in Georgia in arranging financing for and developing the type of project at issue here. CRC consulted with legal counsel before signing the guaranty and executed the guaranty with the advice of counsel. In fact, an attorney acting on behalf of CRC drafted the guaranty and the estoppel certificate given in exchange for CRC's guaranty. As a matter of law, CRC cannot rely upon the defense of duress to void the guaranty that its own counsel drafted, negotiated, and advised it to sign.[6]

Furthermore, even if the defense of duress was available to CRC, there is no evidence that CRC was deprived of its free will by SERCAP. The evidence shows that CRC voluntarily executed the guaranty because it would benefit from it. CRC stood to receive several hundred thousand dollars in developer's fees for the project if completed and in fact had received about $175,000 of the fees at the time of Taylor's deposition. Taylor testified that he told Calloway "to do whatever it took to get this deal closed." He testified that he would have been the person who authorized Calloway to make the proposal, though he could not specifically recall authorizing her to propose the guaranty to SERCAP.

Although CRC complains that SERCAP's attorney "played hardball" by demanding a guaranty in exchange for the estoppel certificate, hard bargaining, by itself, cannot support a duress defense.[7] One may not void a contract on the grounds of duress merely because he entered into it with reluctance, the contract was very disadvanta-

---

[2] *Frame v. Booth, Wade & Campbell*, 238 Ga. App. 428, 429 (2) (519 SE2d 237) (1999).

[3] Id.

[4] Id. at 429-430 (2), 430, n. 1; *Ackerman v. First Nat. Bank &c.*, 239 Ga. App. 304, 305 (2) (521 SE2d 221) (1999); *Morey v. Brown Milling Co.*, 220 Ga. App. 256, 257 (2) (469 SE2d 387) (1996).

[5] *Frame*, supra at 430 (2).

[6] See id.

[7] See generally *Miller, Stevenson & Steinichen v. Fayette County*, 190 Ga. App. 777, 778 (1) (380 SE2d 73) (1989).

geous to him, the bargaining power of the parties was unequal, or there was some unfairness in the negotiations preceding the agreement.[8] The record does not show that SERCAP's conduct was such to induce CRC to act contrary to its free will, or to coerce CRC into pursuing a different course from that which its own judgment at that time dictated as the best for its own interests.[9]

Even giving CRC the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, it is clear that CRC cannot establish its affirmative defense of duress as a matter of law.[10] Therefore, the trial court properly found that no genuine issue of material fact remains and that SERCAP is entitled to summary judgment on its breach of guaranty claim.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 13, 2002 —
RECONSIDERATION DENIED JULY 26, 2002 ▬▬▬▬▬▬

*Benjamin P. Erlitz, David A. Webster,* for appellant.
*Troutman Sanders, Thomas E. Reilly, William M. Droze,* for appellee.

---

[8] *Tidwell v. Critz,* 248 Ga. 201, 204 (1) (282 SE2d 104) (1981).
[9] Id.
[10] See id.