A05A0024, A05A0025. COMPRIS TECHNOLOGIES, INC. et al. v. TECHWERKS, INC. et al.; and vice versa.
(618 SE2d 664)

ELLINGTON, Judge.

In June 1989, as part of a settlement agreement, Techwerks, Inc. sold computer software it had developed to Foodwerks Acquisition Corporation ("FAC") for almost $2 million. Part of the sale price was financed over five years, and FAC signed a promissory note for $564,784.43. Two years later FAC and Compris Technologies, Inc. (FAC's successor in interest), sued Techwerks, Packs Group, Inc., Frank Bender and Jack Bender (collectively "Techwerks"), alleging that Techwerks had breached the settlement agreement and had slandered Compris' title to the software. Techwerks filed a counterclaim for breach of contract, suit upon the note, and other relief. Following a jury trial, the trial court entered judgment on the verdict in favor of FAC and Compris on the slander of title and breach of contract claims. And although the jury verdict did not address the promissory note, the trial court also awarded Techwerks judgment on the note.

In Case No. A05A0024, FAC and Compris appeal, contending the trial court erred in entering judgment on the note when claims pertaining to the note were not submitted to the jury. In Case No. A05A0025, Techwerks cross-appeals, contending that the trial court erred in refusing to amend the pretrial order and in granting or denying various motions, that the jury's verdict is against the weight of the evidence, and that the court miscalculated the interest due on the promissory note. Because the facts and arguments in both cases overlap and arise from the same order entering final judgment, we consolidate these appeals.

Our review of the record reveals the following.[1] These appeals arise out of a decades-long dispute over rights to computer software. In 1982, Jack Bender formed Packs Group, a software development company. Packs Group developed software for use on IBM and NCR computers. In 1986, Bender and Packs Group hired software designer James Melvin. Melvin developed touchscreen point-of-sale software

---

[1] On appeal, we examine the record in the light most favorable to the verdict and judgment. *Horan v. Pirkle*, 197 Ga. App. 151, 153 (2) (397 SE2d 734) (1990). A jury verdict, after approval by the trial court, will not be disturbed on appeal if it is supported by any evidence. Id.

for use in the fast food industry. The software, originally called "the Point," was later renamed "Foodwerks." Because Packs Group had legal and financial problems, most of which stemmed from litigation with IBM and NCR, Bender transferred the assets of Packs Group to Techwerks, Inc., a company owned by his brother, Frank Bender. Jack Bender and Melvin continued working on the Foodwerks software at Techwerks. In 1988, Techwerks hired Paul Eurek to market the Foodwerks software. Techwerks was undercapitalized, so the Benders borrowed heavily from a friend, Peter Pelz, to keep the company operational.

Lawsuits and business expenses drained the Benders and Techwerks of cash. The company was unable to market the Foodwerks software, pay its employees, or repay its investor, Pelz. In April 1989, Melvin, who claimed an ownership interest in the software, joined Pelz and Eurek in an attempt to buy all or part of Techwerks. Negotiations were contentious and spawned four lawsuits, some over rights in the software, others for repayment of loans. One of the suits was an involuntary bankruptcy proceeding initiated by Pelz and other creditors against Techwerks.

On June 29, 1989, the parties, with the assistance of counsel, settled their disputes and signed a "Compromise and Settlement Agreement and Mutual Release." The settlement terms were read aloud before a court reporter and the parties verbally confirmed their consent and understanding. The settlement agreement provided that Techwerks would sell the Foodwerks software to FAC for almost $2 million. Paragraph 2.4 (b) of the agreement provided that $564,784.43 of the sale price[2] would be financed over a five-year period, and the obligation was evidenced by a promissory note attached to the agreement. Consistent with the settlement agreement, the note provided that FAC repay

> the principal . . . plus all accrued and unpaid interest thereon. Interest shall accrue from October 1, 1989 up to and through the date on which all principal and interest hereunder is paid in full, shall be computed on the basis of actual days elapsed in a 365-day year, and shall be calculated on the outstanding principal balance hereunder at an annual rate of interest equal to ten percent (10%).

The note required FAC to make 60 monthly installments of $12,000. In the event of default, the note provided that Techwerks may

---

[2] The sale price also included over $350,000 in cash and the forgiveness of over $1 million in debt.

demand accelerated payment of the entire sum, "time being of the essence; and said principal sum and accrued interest shall both bear interest from such time until paid at the rate of fifteen percent (15%)." The note was secured by the Foodwerks software.

The agreement also provided that Techwerks had "good and marketable title to the [Foodwerks software], free and clear of any" encumbrances except those specified in the agreement. By signing the settlement agreement individually and on behalf of Packs Group and Techwerks, the Benders agreed that they and their companies no longer owned the Foodwerks software, would not make any representations inconsistent with the agreement, and would indemnify FAC for any losses resulting from a breach of the agreement. The agreement also provided that to the extent FAC "is entitled to be indemnified for any amount" due to a breach of the agreement by the Benders or Techwerks, it would be "entitled to offset such amount against any amount otherwise payable to Techwerks" under the agreement.

A year later, in July 1990, software developer Charles Duffield sued Compris, claiming the Foodwerks software infringed upon a program his company had developed. In January 1991, Martin Crosson, another software developer, also alleged the Foodwerks software infringed upon his work product. Compris learned that Jack Bender had contacted Duffield and Crosson and encouraged them to sue Compris. Crosson deposed that he would not have sued absent Jack Bender's encouragement to do so. Compris executives testified that the lawsuits put a cloud on the company's title to the software and interfered with its ability to do business with clients and business partners. Paying legal fees and funding settlements also hurt Compris' cash flow, making it difficult to meet its monthly $12,000 obligation under the settlement agreement.

On January 22, 1991, FAC and Compris sued the Benders, Techwerks, and Packs Group under a variety of theories, including breach of the settlement agreement and slander of title to the Foodwerks software. The Benders, Techwerks, and Packs Group answered the complaint, contending the settlement agreement was obtained by fraud and duress, and counterclaimed for breach of contract, theft of intellectual property, replevin, injunctive relief, and for suit upon the note.

Compris sought a temporary restraining order enjoining Techwerks from declaring the note in default pending resolution of the suit. On February 1, 1991, the court decreed that until the suit was resolved or until the court ordered otherwise, "the status quo be maintained between the parties" and Techwerks "may not accelerate the disputed indebtedness, institute foreclosure proceedings, or otherwise institute any default remedies against" Compris. The court

ordered Compris to begin making payments on its note into the registry of the court. On September 19, 1991, the court modified the February 1991 order and allowed Compris to stop making payments on the note until the suit was resolved. The court reiterated that the parties should maintain the status quo.

Five years later, on October 16, 1996, the trial court entered an order striking the answers, defenses, and counterclaims of Jack Bender and Packs Group based upon their "complete failure to respond to written discovery" and granting Compris' motion for default judgment against the two defendants. Jack Bender filed a "Motion to Open Default Judgment," seeking reconsideration of the order. He contended the failure to respond to discovery was due to "an incapacitating series of medical crises." The court denied the motion on September 2, 1999.

From 1997 through 2002, the remaining parties fought a motions battle, each winning summary judgment on parts of their cases. On October 2, 2001, without leave of court, Compris tendered into the court registry $444,000. Compris stated when it made the tender that the amount paid "does not take into account either plaintiffs' set-off rights or the interest that has accrued on the amount plaintiffs paid into Court prior to the Court's September 1991 Order." Compris asserted that it was paying an amount that exceeded what it owed out of an abundance of caution and that its maximum unpaid balance on the note was $389,476. Finally, Compris asserted that the payment "satisfied, discharged, and extinguished" any obligations it had under the note. At trial, Compris took the position that the note was paid in full.

The parties filed a consolidated pretrial order on July 21, 2003. On that same date, Techwerks filed a motion to amend the pretrial order, contending that the 1989 settlement agreement was void ab initio because it was entered into while involuntary bankruptcy proceedings were pending against Techwerks and that the sale of the Foodwerks software violated the automatic stay. Techwerks moved for summary judgment on the same issue a month later. The court denied both motions. The case proceeded to trial on September 22, 2003.

On October 6, 2003, the jury completed a special verdict form agreed to and submitted by the parties,[3] finding that Techwerks and

---

[3] Through the verdict form, the parties asked the jury to resolve Compris' breach of contract, slander of title, and indemnity claims and to determine the amount of damages due, if any, from each of the defendants. The parties also asked the jury to resolve Techwerks' breach of contract counterclaim on the issue of whether Compris violated a software repurchase provision of the settlement agreement and, if so, the amount of damages owed by Compris. Finally, the parties asked the jury to determine whether Techwerks' actions following the

Frank Bender breached the 1989 settlement agreement and slandered Compris' title to the Foodwerks software, and that both were liable to Compris in the amount of $423,989. The jury also found that Jack Bender and Packs Group, who were in default, were both liable to Compris in the amount of $423,989. The jury awarded punitive damages against both of the Benders in the amount of $212,000 each, and assessed $424,000 in punitive damages against both Techwerks and Packs Group. The jury concluded that each of the defendants were required to indemnify Compris according to Article VI of the Settlement Agreement. The jury awarded Techwerks nothing on its counterclaim for breach of the settlement agreement. The jury also found that Techwerks had, by its conduct, ratified the settlement agreement and was estopped from contending that Compris breached the agreement. The special verdict form did not ask the jury to resolve Techwerks' counterclaim for suit on the promissory note, to calculate whether there was any amount remaining due on the note, or to set off any amount due on the note against the damages awarded.

On November 25, 2003, the trial court entered "Final Judgment and Order on Defendant's Motion for Entry of Judgment in Favor of Techwerks on the Promissory Note." In the first half of the order, the court restated the award made by the jury in favor of Compris. In the second half of the order, the court ordered that Techwerks recover from Compris on the note

> $1,977,189.70 (calculated up to November 21, 2003) which is the balance owed by Plaintiffs on the June 29, 1989 Promissory Note to Techwerks, Inc. The sum of $1,977,189.70 is based on the following calculations: the underlying principal due as of June 7, 1991 is $416,544.07; interest calculated at 10% in accordance with paragraph One of the June 29, 1989 Promissory Note is $1,560,645.70, which totals $1,977,189.70.

The court concluded Techwerks was not entitled to 15 percent interest because Compris was not in default. The court also noted that, although Compris had obtained court orders allowing it to suspend making payments on the note, the orders did not stop the accrual of interest. Further, the court found Compris' tender of $444,000 into the court registry was made without leave of court, as required by OCGA § 9-11-67, so interest continued to accrue.

---

execution of the settlement agreement ratified the agreement and estopped them from challenging the validity of the agreement.

*Case No. A05A0024*

1. Compris complains the trial court essentially overturned the jury's verdict by entering a judgment requiring it to pay almost $2 million to Techwerks on the promissory note. Compris contends the trial court's judgment was erroneous because Techwerks failed to present any evidence at trial supporting its counterclaim on the note or to submit the issue to the jury. Compris also contends that the trial court erred when it failed to apply Compris' set-off rights and in calculating the principal and interest due on the note.

(a) Prior to trial, the parties contested issues pertaining to Compris' obligations on the promissory note. After Techwerks counterclaimed for suit on the promissory note, Compris successfully sought to suspend its payments pending resolution of the lawsuit and to prevent Techwerks from declaring Compris in default. In the consolidated pretrial order, Techwerks asserted that, if the settlement agreement was found to be valid, a jury issue existed on the amount of principal and interest due on the note. In the pretrial order, FAC and Compris also asserted that a jury issue remained on whether the companies were "entitled to setoff their damages against the Promissory Note."

At trial, Compris introduced the promissory note into evidence, along with a complete record of all amounts paid thereunder, as evidenced by copies of checks, letters, receipts, notices, and court orders suspending payment on the note. Compris took the position that the note had been paid in full when it deposited $444,000 into the court registry.[4]

Although Techwerks had asserted the suit on the note in its counterclaim, it submitted no evidence pertaining to the note beyond that already adduced by Compris. Techwerks did not argue Compris' obligations under the note during closing argument or seek a jury instruction on this issue. Further, the special verdict form did not ask the jurors to determine whether Compris owed anything on the note and, if so, to calculate the amount due. Neither Compris nor Techwerks objected to the special verdict form on the ground that the form failed to ask the jury to resolve its counterclaim for suit on the note. Because these issues were left out of the special verdict form, we must assume that these issues were reserved for the trial court. See OCGA § 9-11-49 (a).[5]

---

[4] We found nothing in the trial transcript suggesting that Compris challenged the validity of the note or that Compris asked the jury specifically to set off any balance it owed on the note against the damages it suffered.

[5] OCGA § 9-11-49 (a) provides in relevant part:

After the jury returned its verdict but before the court entered a final judgment on the verdict, Techwerks asked the court to enter judgment on the note in the amount of $2.7 million. Compris responded, contending that the note was paid in full, that it was not in default, and that the exercise of its contractual set-off right extinguished any amount owed on the note. The trial court ruled in favor of Techwerks and ordered Compris to pay $1,977,189.70 in principal and interest on the note.

As Techwerks states in its appellate brief, there was sufficient evidence presented at trial to support its counterclaim for judgment on the note and to allow the judge to enter judgment on it. See *Tatum v. Bank of Cumming*, 135 Ga. App. 675, 676 (3) (218 SE2d 677) (1975) ("A promissory note is an unconditional obligation, sufficient in itself to support a cause of action."). Consequently, we find no error in the court's determination that FAC and Compris were liable on the note.

(b) We agree with Compris, however, that the trial court's order fails to address the issue of whether and to what extent Compris' set-off rights, if any, should be applied to any amount due on the note. Both the settlement agreement and the note specifically provide that Compris was "entitled to offset such amount against any amount otherwise payable to Techwerks" under the agreement. Further, we are unable to determine whether the court correctly calculated the interest due on the note. The court concluded that the note requires the repayment of interest at a rate of ten percent "in accordance" with the promissory note. The court did not specify what the promissory note actually required, or whether and at what frequency the court was compounding interest. Consequently, we must vacate the judgment on the note as to the amount awarded, and remand to the trial court for an evidentiary hearing on the amount due under the note, taking into account Compris' set-off rights, if any, and the proper rate of interest.

2. Compris contends the trial court erred in denying its motion for payment of funds into the court registry. The court denied the motion "in light of" its order entering final judgment for Compris and also entering judgment in favor of Techwerks on the note. This ruling provides us with no guidance as to the court's rationale for retaining

If in [submitting a special verdict form] the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accordance with the judgment on the special verdict.

the funds in the registry. Upon remand, after recalculating the amount due on the note, the court must determine to whom these funds are to be paid.

### Case No. A05A0025

3. Techwerks argues that the settlement agreement was void ab initio because it was entered into while Techwerks was in bankruptcy and, thus, violated the automatic stay provisions of the Bankruptcy Code. Techwerks contends the trial court erred in denying its motion to amend the pretrial order and its motion for summary judgment on this basis. Our review of the record, however, reveals that the bankruptcy court dismissed the proceedings against Techwerks after conducting an evidentiary hearing on a joint motion to dismiss filed by both the creditors and the debtors, a motion expressly based upon the settlement agreement. The bankruptcy court found that dismissal was "in the best interest of creditors and the estate." The bankruptcy court, by so ruling, rendered moot any argument that the settlement agreement violated the automatic stay. See *Olive Street Investment v. Howard Savings Bank*, 972 F2d 214, 216 (8th Cir. 1992) ("Once the bankruptcy proceeding is dismissed, neither the goal of a successful reorganization nor the debtor's right to the automatic stay continues to exist."). Consequently we find no error in the trial court's ruling.

4. Techwerks contends the evidence adduced at trial was insufficient to support the jury's verdict on Compris' claim for slander of title to the Foodwerks software. Slander of title requires proof of the following:

> The owner of property may bring an action for "libelous or slanderous words which falsely or maliciously impugn his title if any damage accrues to him therefrom." OCGA § 51-9-11. In order to sustain an action of this kind, the plaintiff must allege and prove the uttering and publishing of the slanderous words; that they were false; that they were malicious; that he sustained special damage thereby; and that he possessed an estate in the property slandered.

(Citations and punctuation omitted.) *Latson v. Boaz*, 278 Ga. 113, 114 (598 SE2d 485) (2004). The evidence adduced supports a finding that Compris owned the Foodwerks software. The evidence also shows that Jack Bender, individually and in his capacity as an officer of Packs Group and Techwerks, told people, particularly Crosson and Duffield, that Compris was marketing software that was stolen and that infringed upon the rights of others. Compris presented some

evidence that the infringement claims were false. Compris presented evidence of damages in that it lost an equity investment with IBM and spent in excess of $500,000 defending and settling the Crosson and Duffield lawsuits in order to remove any cloud from its title to the software. Finally, the jury could infer that Jack Bender's statements were malicious, that they were intended to hurt Compris' ability to pay its obligations so that Techwerks, Frank Bender, and Packs Group could regain control of the software, which was collateral for the note. It appears from the record that the jury had sufficient evidence to infer that Techwerks, Packs Group, and the Benders, acting in concert, slandered Compris' title to the Foodwerks software. See id.; see also *Piedmont Cotton Mills v. Gen. Warehouse No. Two*, 222 Ga. 164, 168 (2) (149 SE2d 72) (1966) (holding that a corporate officer's intentional torts may be imputed to the corporation).

5. Techwerks contends the jury's award of punitive damages was not authorized because the evidence of willful misconduct on the part of the defendants was not "clear and convincing," as required by OCGA § 51-12-5.1 (b). "[C]lear and convincing evidence is an intermediate standard of proof, requiring a higher minimum level of proof than the preponderance of the evidence standard, but less than that required for proof beyond a reasonable doubt." (Citations and punctuation omitted.) *Clarke v. Cotton*, 263 Ga. 861, 862, n. 1 (440 SE2d 165) (1994). The jury was charged on this concept of law.

It is the responsibility of this Court to determine whether the evidence supports the jury's determination that the evidence of wilful misconduct was clear and convincing. *Kodadek v. Lieberman*, 247 Ga. App. 606, 610 (2) (545 SE2d 25) (2001). In this regard, "it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage." (Punctuation and footnote omitted.) Id. In addition to the evidence recounted above, the jury heard evidence that Jack Bender informed the presidents of two companies that the Foodwerks software infringed upon software rights held by those companies, despite the fact that the settlement agreement expressly prohibited Bender from doing so. The evidence authorized the jury to infer that Jack Bender not only wilfully made these false statements, but, as Crosson deposed, Bender agreed to give evidence to assist in the pursuit of these suits in exchange for promises not to sue him, his brother, Techwerks or Packs Group. This agreement was reduced to writing and included spaces for both Frank and Jack Bender to sign. We find the evidence adduced sufficient to satisfy the clear and convincing standard for assessing punitive damages.

6. Jack Bender and Packs Group contend the trial court abused its discretion in refusing to open the default judgment it entered against them for failing to respond to discovery for over five years.

They argue that a series of health problems suffered by Jack Bender and his wife prevented participation in discovery. The record reveals, however, that Jack Bender participated in discovery in other cases despite those health problems. Because the record does not support a finding of excusable neglect, the trial court did not abuse its discretion in refusing to open the default judgment. *Carter v. Ravenwood Dev. Co.*, 249 Ga. App. 603, 604-605 (1) (549 SE2d 402) (2001).

7. Techwerks contends the trial court erred in directing a verdict in favor of Compris on Techwerks' claim for rescission of the settlement agreement based upon economic duress. As we have held,

> [u]nder Georgia law, duress consists of imprisonment, threats, or other acts, by which the free will of the party is restrained and his consent induced. "Business compulsion" or "economic duress" involves the taking of undue or unjust advantage of a person's economic necessity or distress to coerce him into making a contract and is recognized as a contractual defense. A duress claim must be based on acts or conduct of the opposing party which are wrongful or unlawful. Georgia courts are reluctant to void contracts, and we have found no Georgia decision voiding a contract on the theory of economic duress. *And, in any event, when the signer of an agreement is sophisticated in business matters and has access to and in fact obtains advice of counsel, the defense of duress is not available to void the contract.*

(Punctuation and footnotes omitted; emphasis supplied.) *Cooperative Resource Center v. Southeast Rural Assistance Project*, 256 Ga. App. 719, 720-721 (569 SE2d 545) (2002). Although the Benders, Techwerks, and Packs Group contend that their economic situation was either caused by or exacerbated by Compris' allegedly wrongful acts, the fact remains that these sophisticated businessmen, with the advice of counsel, made an informed decision to settle their claims instead of pursuing the various lawsuits in which the alleged wrongful conduct was at issue. They may not avoid the settlement agreement on the ground of duress "merely because [they] entered into it with reluctance, the contract [was] very disadvantageous to [them], the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreement." (Citation omitted.) *Frame v. Booth, Wade & Campbell*, 238 Ga. App. 428, 430 (2) (519 SE2d 237) (1999). Because Techwerks failed to present evidence sufficient to establish a duress defense to the settlement agreement, the trial court properly granted a directed verdict on that claim.

8. Techwerks claims the court erred in applying only ten percent interest to the promissory note; it argues it is entitled to fifteen

percent interest because Compris was in default. However, the record shows that pretrial court orders provided that "the status quo be maintained between the parties" and Techwerks could "not accelerate the disputed indebtedness, institute foreclosure proceedings, or otherwise institute any default remedies against" Compris. Because the evidence supports the court's finding that Techwerks was prohibited from imposing default remedies, we find no error.

*Judgment affirmed in part and vacated in part, and case remanded. Smith, P. J., and Adams, J., concur.*

DECIDED JULY 15, 2005 —
RECONSIDERATIONS DENIED JULY 28, 2005 — 

*Hunton & Williams, Brooke F. Voelzke, Jerry B. Blackstock, Leslie B. Zacks, Bradley W. Grout,* for appellants.

*Womble, Carlyle, Sandridge & Rice, Charles B. Tanksley, Michael S. Welch, Roy E. Barnes,* for appellees.